[THE STATE, EX REL.] FOGLE ET AL., APPELLANTS, *v.* RICHLEY, DIR., APPELLEE.

[Cite as Fogle v. Richley (1978), 55 Ohio St. 2d 142.]

(No. 77-40—Decided July 19, 1978.)

144

Mr. *William F. Brown,* for appellants.

Mr. *William J. Brown,* attorney general, Mr. *Donald J. Guittar* and Mr. *Charles E. Connor,* for appellee.

*Per Curiam.* The substance of appellants' claim is that the state must reappropriate the land in question. Appellants reason that the recitation in the appropriation by the Cleveland, Columbus and Cincinnati Railroad Com-

pany over a century ago that the taking was for the purpose of constructing and operating a railroad requires its continued use for that purpose. The object of that recitation was to describe the public purpose, which is required in order to justify the delegation of the sovereign power of appropriation to the railway company.* The language does not specify a reversion in the event of use for any other purpose, although assertions of the use for other than railroad or other public purposes or the prolonged failure to use the property for such public or railroad purposes have, in a number of disparate factual situations, led courts to hold that the abandonment of public purpose revived the rights of the owners of the fee. See *Hatch* v. *C. & I. R. R. Co.* (1868), 18 Ohio St. 92, *Vought* v. *C. H. V. & A. R. R. Co.* (1898), 58 Ohio St. 123, *Red River T. & S. R. Co.* v. *Davis* (Tex. Civ. App. 1917), 195 S. W. 1160; and *Abercrombie* v. *Simmons* (1905), 71 Kan. 538, 81 P. 208. See, also, *Corwin* v. *Cowan* (1861), 12 Ohio St. 629; *Day* v. *Railroad Co.* (1886), 44 Ohio St. 406; and *Henry* v. *Columbus Depot Co.* (1939), 135 Ohio St. 311.

In the instant cause, we have no facts indicating an intention to abandon the easement either by the railway company or by the state. The ownership of the railroad, however described, was appropriated from the railroad by the state for a more compelling public use. Had the state made the appropriation at the time of the original taking, it presumably would have paid the same price as that which was paid to the original owner by the railroad.

As this court stated in *Malone* v. *Toledo* (1876), 28 Ohio St. 643, at 656:

" * * * When real estate is so appropriated, for one

---

*See *Hatch* v. *C. & I. R. R. Co.* (1868), 18 Ohio St. 92, 120-121, in which this court stated:

"The right of eminent domain (the right to subject private property to public uses, with the concurrent obligation to make full compensation therefor) is inherent in the state, and when it is lodged to any extent in corporations it is a delegated right, and is limited by the uses for the furtherance of which, on the ground of public policy, it is conferred."

particular public purpose, the fact that it is by legislative authority applied to another public purpose is not necessarily an abandonment, nor is it a forfeiture of the public interest. Instances are abundant in the legislation of the state where land has been taken for one purpose and used for another, without objection or complaint from any one. Railroads cross highways, and no one has ever supposed that this was such an abandonment of the highway as that the soil reverted to the original owner. So canals have been allowed to use a portion of turnpikes. * * * It is now every day's experience that streets are used by railroads.''

The substantial agreement of the parties that the nature of the estate taken was only an easement does not inhibit the use of the property for highway purposes now, nor does the use of that land for that purpose amount to an additional burden upon so much of the ''fee'' as may still be retained and held by appellants. This is because the clear purpose of the original taking was for the exclusive use of the property by the railroad. There can be no greater burden upon property than that which results from an appropriation of a right to exclusive use. Whether the use thereafter is limited to use as a railroad or extends to a public highway purpose is immaterial, for the singular objective is to facilitate public transportation, and there can be no detriment to appellants, whose predecessor-in-title has been fully paid, and who ''can not now claim, with any semblance of justice, to be paid over again for the same thing.'' *Hatch, supra,* at page 121.

The trial court in the instant cause held that ''[t]he change from railroad to highway use of the property continues the same service to the public at no detriment to the plaintiffs. To require a second appropriation would, in the court's opinion, constitute an injury to the public, to the general intent of the original perpetual easement and to substantial justice.'' We find his remarks eminently sensible and not precluded by any of the cases cited by appellants, all of which have been carefully examined.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE and W. BROWN, JJ., concur separately.

CELEBREZZE, J., concurring. I agree with the majority's decision to deny any additional compensation to appellants. Although the use of the easement has been changed from a railway road bed to a public highway, appellants have not shown that this new public use is a greater burden upon their fee than was the former public use. This appears to be the test generally employed by the courts in determining whether the owner of the servient estate is entitled to additional compensation due to a change in the nature of the use of an easement. In this regard Nichols has commented as follows in his multi-volume work on the law of eminent domain:

"The cases in which the original use for which the land was taken has been continued and some additional burden imposed have been discussed in the preceding pages. It sometimes becomes expedient to abandon the original use and to substitute a different one. Such change may be effected if the proposed use is similar in character to that of the existing use. * * * The right of the condemnor to effect such change is not necessarily dependent upon the fact that it acquired a fee interest for the purpose of the existing use. The owner of the fee, who has received compensation for a perpetual easement in the land, is in no position to require that the public use continue precisely the same, or that it be operated by the same public agent. If the new use is no more onerous than the old, and is substituted for it by the same act which discontinues the old, he is not entitled to any compensation for a change which did not in fact cause damage. If it is more onerous,

he is entitled to recover compensation for the increase in the burden only. In both instances, however, the two uses must be of the same general nature. * * *

"Applying these principles, the owner of the fee is not entitled to recover at all if a turnpike is changed to a public highway, or a public highway to a turnpike, except that in the latter case the tollhouse is an additional burden. A city street is no greater burden than a country road, or an alley, and a change from a street to a parkway does not entitle the owner of the fee to compensation. It has been held that a railroad is no greater burden than a canal, but when a railroad is laid out over a former highway, turnpike or park, the owner of the fee must be paid for the difference. When a railroad location or a canal is laid out as a public highway no damage is done. In all the above cases the new use is of the same general nature as the old—public travel. * * *" 3 Nichols On Eminent Domain (Rev. 3 Ed.), 9-108 to 9-112, Section 9.35. See, also, *Hatch* v. *C. & I. R. R. Co.* (1868), 18 Ohio St. 92; *Vought v. C. H. V. & A. R. R. Co.* (1898), 58 Ohio St. 123; *Newton* v. *Manufacturers' Ry. Co.* (C. A. 6, 1902), 115 F. 781.

W. BROWN, J., concurs in the foregoing concurring opinion.