WRAY, Dir., Appellant,

v.

PARSSON et al., Appellees.

[Cite as *Wray v. Parsson* (1995), 101 Ohio App.3d 514.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

94CA005870.

Decided March 1, 1995.

*Betty D. Montgomery*, Attorney General, and *Richard Makowski* and *Karen A. Cincione*, Assistant Attorneys General, for appellant.

*Dennis O'Toole* and *Daniel D. Mason*, for appellees.

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Robert Palmer*, Assistant Prosecuting Attorney for Lorain County Auditor.

QUILLIN, Presiding Judge.

This cause was heard upon the appeal of Jerry Wray, Ohio Director of Transportation, from a jury verdict awarding Floyd and Denise Parsson $25,000 as compensation and damages in a land appropriation case in the Lorain County Court of Common Pleas. We affirm.

The Parssons own a home on State Route 252 in Lorain County. The road by their house has an "s" shaped curve and a sudden change of grade that has made it a high accident area. The Director of Transportation decided that the road should be straightened and the grade improved to alleviate the problem.

To straighten the curve, the Director will move the roadway approximately two feet closer to the Parssons' house, which will necessitate the appropriation of a portion of the Parssons' property. The state currently holds a permanent highway easement over the Parssons' property for the existing roadway. As part of the project, the Director planned to appropriate the parcel subject to the easement and a strip of the Parssons' land that runs alongside the existing roadway. The Director is also taking a temporary easement to two thousand three square feet of the Parssons' land that runs along the site of the new roadway to facilitate the construction.

In the appropriation action, the only issues for the jury to resolve were the value of the property taken by the state, the value of the temporary easement, and the damages to the residue. The jury awarded $11,400 compensation for the property taken, $3,600 for the temporary easement and $10,000 as damages to the residue.

The Director of Transportation appeals asserting five assignments of error.

## Assignment of Error I

"The trial court erred to the prejudice of appellant by admitting and failing to strike testimony valuing property subject to an existing permanent highway easement at more than a nominal amount."

At trial, the Parssons' real property valuation expert, Lester Drage, testified that the land which had been subject to the permanent easement had a value of $.67 per square foot. As a general rule, however, land subject to a permanent highway easement has no substantial value and the state should only be required to pay a nominal amount to acquire it in fee simple. See *Fogle v. Richley* (1978), 55 Ohio St.2d 142, 9 O.O.3d 115, 378 N.E.2d 472. Appellant objected to the expert's testimony and moved to have it striken. The trial court denied both motions. As part of its jury charge, however, the trial court clearly instructed the jury that property subject to a permanent easement has no substantial value. The record does not include final arguments to the jury. Because a jury is generally presumed to have followed the instructions supplied by the trial judge, *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus, the alleged error in not striking the expert's testimony was rendered harmless. Moreover, the jury awarded a lump sum as compensation for all of the property taken without stating the values assigned to the two parcels. Absent an interrogatory breaking down the award, we cannot tell what value the jury attributed to the parcel subject to the permanent easement and must presume that the jury correctly followed the trial court's

instructions. See *Berisford v. Sells* (1975), 43 Ohio St.2d 205, 208, 72 O.O.2d 117, 119, 331 N.E.2d 408, 409–410.

Accordingly, the assignment of error is overruled.

## Assignment of Error II

"The trial court erred to the prejudice of appellant in refusing to present an instruction requested by the director to award only nominal compensation for property subject to an existing highway easement and in altering a written copy of the instructions to reflect a different specific instruction than that orally delivered in open court."

■ Civ.R. 51(A) provides:

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.  * * * "

"When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus.  Appellant failed to object to the jury instruction prior to the jury retiring and is therefore barred from raising the issue on appeal.

■ Appellant's assertion that the jury instructions were altered is without merit.  It is fundamental that the appellant bears the burden of affirmatively demonstrating error on appeal. *Pennant Moldings, Inc. v. C & J Trucking Co.* (1983), 11 Ohio App.3d 248, 251, 11 OBR 374, 377, 464 N.E.2d 175, 179. Appellant also has the responsibility of providing the reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314, 549 N.E.2d 1237, 1238–1239.  No change in the jury instructions is demonstrated in the record.  Accordingly, the assignment of error is overruled.

## Assignment of Error III

"The trial court erred to the prejudice of appellant in permitting testimony concerning valuation of a temporary easement based on noise, inconvenience, dirt and annoyance which might be occasioned by construction of the highway improvement."

■  In support of this assignment of error, appellant points to appropriation cases where landowners have been denied damages for inconvenience and annoyance when those elements are common to the public.

"Another exception to recovery for damages to the residue is elements of damage resulting from the construction itself.  Elements of annoyance, noise, inconvenience and interference of temporary duration during construction of an improvement and common to the public are not recoverable as damages in an appropriation action.  *Colonial Furniture Co. v. Cleveland Union Terminal Co.* (1934), 47 Ohio App. 399, 191 N.E. 903.  The reason is that these elements are not permanent in nature as they do not last beyond the completion of the project and have no effect on the market value of the property before the improvement was commenced and no effect upon the market value of the residue after the improvement was completed."  *Hurst v. Starr* (1992), 79 Ohio App.3d 757, 764, 607 N.E.2d 1155, 1159.

It stands to reason that the noise and inconvenience that occasion construction do not affect the fair market value of the fee because they are merely temporary.

It would be unrealistic, though, to ignore such factors in determining the fair market value of the temporary easement.  The Ohio Supreme Court has discussed the determination of fair market value:  " '[E]very element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered.' "  *Sowers v. Schaeffer* (1951), 155 Ohio St. 454, 459, 44 O.O. 419, 421–422, 99 N.E.2d 313, 317.  Certainly an ordinarily prudent business person would consider the proposed use of the property and whether that use would interfere with that person's enjoyment of the remaining property when determining the rental value of a temporary taking.  Although such elements should not be considered in determining the fair market value of the fee, such temporary conditions that impair the enjoyment of the residue are properly considered in determining the fair market value of a temporary taking because they are the kinds of factors that an ordinarily prudent business person would consider in establishing rental value.  Because the trial court did not err in allowing testimony regarding the noise, dirt and inconvenience, the third assignment of error is overruled.

### Assignment of Error IV

"The jury verdict and judgment upon it which awards compensation for a temporary easement exceeding the fair market value of the fee is contrary to the law."

■  We do not agree that the fair market value of the temporary easement must, as a matter of law, be less than the value of the fee.  It is certainly

conceivable that under some circumstances the right to use a parcel of land would be more valuable than the rights of ownership and its concomitant burdens. Nevertheless, if we were to accept appellant's proposition, the argument would still be without merit because the compensation for the temporary easement does not necessarily exceed the value of the fee for that parcel.

■ It should be noted that there was no evidence of the fee value of the temporary easement. Appellant suggests that the value for the fee can be determined by first determining the value per square foot of the land appropriated and then multiplying that amount by the number of square feet subject to the temporary easement, i.e., two thousand three. For the purposes of his argument, appellant purports to use the Parssons' valuation of the property appropriated. Appellant contends that, because the Parssons claimed that the 9,540 square feet of land taken was worth $12,000, the value of the land is $1.26 per square foot. Applying that value to the temporary easement (2003 × $1.26), the fee for the easement, $2,633.40, is considerably less than the rental value determined by the jury, $3,600.

Appellant, however, fails to account for the fact that the land subject to the existing permanent easement had only nominal value. Therefore, only the 3,877 square feet of land which was not subject to the permanent easement was of any value. This means that the per square foot value assigned by the Parssons was approximately $3.09 and not $1.26 ($12,000 divided by 3,877 sq. ft., not $12,000 divided by 9,540 sq. ft.). Using this figure, the value of the fee of the temporary easement would be $6,199.12 (2003 sq. ft. × $3.09). If the same calculations are made using the jury's value for the property taken, approximately $11,399 for 3,877 sq. ft., the result is $2.94 per square foot and a fee value for the temporary easement of $5,889.14. In both instances, the value of the fee would exceed the $3,600 value of the temporary easement.

The assignment of error is overruled.

## Assignment of Error V

"The trial court erred to the prejudice of appellant in refusing to strike testimony on damages to the residue which considered acquisitions of other properties by another governmental unit having the power of eminent domain."

■ The total award in an appropriation action consists of two elements—compensation for the property taken and damages for any loss of value to the residue. *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 16 OBR 481, 485, 476 N.E.2d 695, 700–701. Appellant correctly points out that the proper way to determine the damages to the residue is to compare the property's fair market value prior to the taking to its fair market value afterwards. *In re*

*Easement for Hwy.* (1952), 93 Ohio App. 179, 183, 50 O.O. 410, 412, 112 N.E.2d 411, 414.

There are several ways of determining the fair market value of a property. Drage, the Parssons' valuation expert, testified that he used the market approach, comparing the property to recent sales of similar property, and determined that the property was worth $74,000 prior to the appropriation. To check that result, he also calculated the value using the cost approach—a valuation method which combines the cost of the land and the cost of reproducing the structure, less depreciation.

To determine the value of the property after the appropriation, Drage testified that he considered the fact that the appropriation would reduce the frontage and the side yard and that the road would come closer to the house. He stated that the property would have fewer prospective buyers and, as a result, be worth only $50,000 after the appropriation.

On cross-examination, Drage stated that he had used two prior appropriations in which he was involved as a guide for determining the damages to the Parssons' property. Appellant correctly points out that it is improper to consider other appropriations as comparables when determining value using the market approach. *Masheter v. Brewer* (1974), 40 Ohio St.2d 31, 69 O.O.2d 202, 318 N.E.2d 849, paragraph one of the syllabus. That is because they are not necessarily indicative of fair market value—the price that a willing buyer would pay and that a willing seller would accept in a voluntary sale. The price of a sale to an appropriating authority may reflect a compromise between the authority with the power to force a sale and the owner with little power to oppose it.

Drage stated, however, that he merely used the other appropriations "as a guide." He said that the other properties did not play a significant role in his estimate of damages to the Parssons' property because the properties were not similar. He did not state the values of the other properties or how much their values had been diminished by the appropriations; he merely stated that he had used the transactions as a guide and that they did not play a significant factor in his valuation.

It is worth noting that although Drage testified that the damage to the residue would be $14,000, an examination of his numbers reveals some confusion in arriving at that result. The damages to the residue are the decrease in property value less a credit for the amount paid in compensation for the taking. In calculating the damages, however, Drage also credited the state for the amount paid for the temporary easement. As the amount paid for the temporary easement is analogous to rent and is only paid to compensate the property owner for use of the property for the period of the easement, it should not have been

considered in figuring the damages to the residue. Based on his pre- and post-appropriation figures, the property value would drop by $24,000. Drage's estimate for the property taken was $6,392. As a result, his estimate of the damages to the residue should have been $17,608.

Each of the Parssons testified that the damage would be between $40,000 and $50,000. Appellant's expert testified that there would be no damage to the residue, asserting that "[t]he dwelling and remaining property were not being physically affected by the taking and that the remaining property would have the same functional and utility marketability after [the taking]." It is apparent from the verdict, however, that the jury did not fully accept the testimony of any of the witnesses and arrived at its own value for the damages, $10,000.

Based on the foregoing, we cannot say that it was prejudicial error to allow Drage's testimony regarding the damages to the residue. Accordingly, appellant's fifth assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

DICKINSON and MILLIGAN, JJ., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, sitting by assignment.