OPINION
{¶ 1} This is a timely appeal from the judgment of the Mahoning County Court of Common Pleas entered after a jury found Vincent Lewis ("Appellant") guilty of felonious assault. Based on the following, this Court overrules Appellant's assignments of error and affirms his conviction.
 {¶ 2} On February 23, 2000, Sabrina Burkes was taken to St. Elizabeth Hospital in critical condition after she was beaten at her home in Youngstown, Ohio. The beating left her in coma for three days. She also suffered two black eyes, a torn retina, broken jaw, broken ribs, a collapsed left lung, ruptured spleen, damaged nerves in her arm and a cracked vertebra. (Tr. pp. 380, 601-602). Initially, due to severe head trauma, Ms. Burkes was unable to identify her attacker or recall events surrounding the incident. Gradually, however, her memory returned and, in July of 2000, she identified Appellant as her attacker.
 {¶ 3} Ms. Burkes and Appellant had been involved in a turbulent relationship for some three years prior to the incident. (Tr. pp. 387, 438, 636). At some point during the relationship, Appellant also became involved with Rhonda Woodall, who lived nearby. Ms. Burkes and Appellant often argued about his ongoing relationship with Ms. Woodall. Appellant lived with Burkes off and on in a house she shared with a cousin, and the cousin's four young children. (Tr. pp. 389, 442).
 {¶ 4} Appellant and Burkes argued sporadically throughout the day that culminated in the beating. (Tr. p. 392). Burkes remained at home drinking beer and smoking crack cocaine while Appellant would periodically leave and then return to the apartment. At some point, Appellant left a puppy with Burkes, who, a short time later, had her cousin and a friend return the animal to Appellant at Ms. Woodall's residence. (Tr. pp. 427-428, 473, 495, 660-661). According to Ms. Burkes, she then resolved to end her relationship with Appellant. (Tr. p. 401).
 {¶ 5} There are several accounts of the events immediately leading up to and surrounding the actual beating. According to Burkes, she was out on the porch getting some air late that night when she saw Appellant approach the house. Burkes had agreed to baby sit her cousin's children while the cousin and her friend went to a local tavern. The children were evidently in bed and Ms. Burkes was home alone with them. (Tr. p. 374). Burkes noticed that Appellant was walking quickly and appeared angry. Burkes testified that Appellant demanded that she give him his money and abruptly began to punch her. (Tr. p. 375).
 {¶ 6} Burkes testified that Appellant grabbed her by the hair and pulled her inside where, "he proceeded to just beat me, just beat on me, just keep beating me like I was a man." (Tr. p. 378). At one point, Burkes recounted that Appellant pushed her down a flight of stairs before dragging her back up to a second floor bedroom where, after pummeling her some more, he left her for dead. (Tr. pp. 376-379).
 {¶ 7} Appellant was downstairs in the living room when the friend returned from the tavern alone, intending to keep Burkes company until her cousin arrived. (Tr. p. 463). The two spoke briefly before the friend went upstairs to find Burkes. The friend noted that Appellant was not wearing a shirt. (Tr. p. 464). When the friend discovered Burkes, he immediately called for an ambulance. (Tr. p. 465). He recalled speaking briefly with Appellant at the time and Appellant admitted that he had attacked Burkes, ostensibly because she had stolen something from him. (Tr. p. 465). The friend then returned upstairs to watch over Burkes until the ambulance arrived.
 {¶ 8} In the meantime, Appellant left the house and headed toward Ms. Woodall's home. Woodall, who was out driving around at the time, encountered Appellant walking down Glenwood Avenue. Appellant was obviously angry. Woodall noted that he was breathing hard, carrying a pillow, and not wearing a shirt. (Tr. p. 498). Appellant got into Woodall's car and told her to drive past Burkes' house. (Tr. p. 499). Woodall complied and then drove back to her own home. Appellant remained with Woodall the rest of the night. Woodall recalled that Appellant behaved oddly in that he was nervous, his hands were swollen and she saw blood on his shorts. Woodall also noted that Appellant had a scar of some kind on his stomach but no marks or bruises on his face. (Tr. pp. 500, 518-519).
 {¶ 9} When police and medical personnel first arrived at Burkes' house, they were greeted by a trail of blood leading upstairs to where she lay unresponsive, severely bruised and half naked in a second floor bedroom. (Tr. pp. 531, 534, 540, 551, 590). As the police investigation unfolded, Appellant quickly became a primary suspect. (Tr. pp. 546, 554).
 {¶ 10} On February 25, 2000, police took Appellant into custody on an outstanding traffic warrant and, that morning, questioned him about the incident. The prosecution introduced a videotape of that interview at trial. (Tr. p. 557). In that five-minute conversation with police, Appellant admitted that he and the victim had been romantically involved for about two and one-half years and that he frequently stayed at her home. Appellant, however, went on to inform police that he had not been with the victim for several days, and denied any knowledge as to what had happened to her. (State's Exh. 13). One of the officers who participated in that interview later testified that at the time, Appellant did not appear to have suffered any recent physical injury. (Tr. p. 558).
 {¶ 11} Ms. Burkes remained in the hospital for five weeks. (Tr. p. 560). Police did not initially charge Appellant with the beating because Burkes was unable to tell them what had occurred. (Tr. p. 576). As earlier stated, due to a closed head injury, Burkes was initially comatose. (Tr. p. 602). Even after she awoke her speech was hampered by a broken jaw and ongoing neurological damage. (Tr. p. 616). When police spoke to Ms. Burkes on March 30, 2000, she stated that she could not remember what had happened to her. (Tr. p. 560). Almost five months passed before Ms. Burkes recovered enough memory of the beating to provide police with salient details about what had occurred. (Tr. pp. 579-580).
 {¶ 12} Gradually, Burkes began to remember her ordeal and, on July 7, 2000, she provided police with a statement identifying Appellant as the person who attacked her. In August of 2000, the grand jury issued an indictment charging Appellant with attempted murder under R.C. §2923.02(A)(E) and § 2903.02(A)(D). A superceding indictment followed in January of 2001, which added the charge felonious assault in violation of R.C. § 2903.11(A)(1)(D).
 {¶ 13} After a trial, the jury entered a verdict of guilty on the felonious assault charge but acquitted Appellant of attempted murder. On March 27, 2001, the trial court sentenced Appellant to a prison term of eight years. (Judgment Entry, March 27, 2001). On March 27, 2001, Appellant filed his Notice of Appeal and now raises four assignments of error.
 {¶ 14} In his first assignment of error, Appellant claims that,
 {¶ 15} "APPELLANT'S CONVICTION OF THE CHARGE OF FELONIOUS ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} Appellant here contests, not the sufficiency, but the weight of the evidence against him at trial. A challenge to the weight of the evidence presumes that the evidence was legally sufficient to support a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380, 388,678 N.E.2d 541. In Thompkins, our Supreme Court noted that even when a reviewing court concludes that the judgment below was supported by sufficient evidence, it is nevertheless entitled to consider whether the judgment is against the weight of the evidence. Id. at 387.
 {¶ 17} A determination of the manifest weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they find the greater amount of credible evidence sustains the issue to be established before them. State v. Layne (March 1, 2000), 7th Dist. No. 97CA 172; citing Thompkins, supra at 387, quoting Black's Law Dictionary, 1594.
 {¶ 18} Analysis under the manifest weight of the evidence standard requires a court of appeals to review the entire record, reweigh the evidence and all reasonable inferences, consider the credibility of witnesses, and resolve conflicts in the evidence. Such an undertaking essentially places the court of appeals in the position of "thirteen juror." Thompkins, supra at 387; citing Tibbs v. Florida (1982),457 U.S. 31, 42.
 {¶ 19} This Court will only reverse and remand a conviction as contrary to the manifest weight of the evidence in order to prevent a miscarriage of justice. Our authority to do so is reserved for the rare and exceptional case where the evidence weighs heavily against the conviction and convinces us that the jury clearly lost its way.Thompkins, supra at 387. This Court does not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the essential elements of the offense have been proven beyond a reasonable doubt. State v. Baker (1993), 92 Ohio App.3d 516, 538,636 N.E.2d 363; citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. Based on the record herein, this is not a case that warrants this Court's intervention as a thirteenth juror.
 {¶ 20} The jury convicted Appellant of the offense of felonious assault. Under R.C. § 2903.11(A)(1), one commits a felonious assault by causing serious physical harm to another. Felonious assault is a felony of the second degree. R.C. § 2903.11(D). In contrast, the offense of aggravated assault, a felony of the fourth degree, prohibits the following conduct:
 {¶ 21} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 22} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 23} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *." R.C. § 2903.12(A)(1) (2).
 {¶ 24} Because the elements of aggravated assault are identical to those of felonious assault except for the additional element of serious provocation, aggravated assault is an inferior degree of felonious assault, rather than a lesser-included offense. State v. Kehoe (1999),133 Ohio App.3d 591, 729 N.E.2d 431; and State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294.
 {¶ 25} Appellant contends that the victim's delayed account of the incident was uncorroborated and incredible. Therefore, Appellant believes her testimony was an insufficient basis on which to sustain a felonious assault conviction. At trial, Appellant maintained that when he arrived at Ms. Burkes' house late on the night of the incident, she was waiting for him on the porch. (Tr. p. 664). According to Appellant, after he accompanied Burkes inside and the two went to bed, Ms. Woodall showed up in her mother's car and started honking the horn. Appellant testified that Burkes, who had been drinking most of the day, went berserk. (Tr. p. 666). According to Appellant, Burkes, intoxicated with cocaine and alcohol and crazed by jealousy, grabbed a kitchen knife and started outside to confront Woodall. (Tr. p 667). Appellant testified that he managed to disarm Burkes, but she stormed out anyway. Before Burkes could reach Woodall's car, though, Woodall drove off.
 {¶ 26} Appellant testified that Burkes returned to the house, and, having no other place to vent her rage, she accosted him. Appellant testified that Burkes tore away his shirt while punching, scratching and hitting him, leaving, "scratches and bruises all on [his] chest [and] stomach." (Tr. p. 667). Appellant testified that he pushed her away and started up the stairs to get his jacket so that he could leave, but she followed, pulling at him. Appellant made it almost to the top of the stairs in this manner, when, as he flung Burkes' arm away, she toppled down the stairs. (Tr. p. 669).
 {¶ 27} Appellant continued to climb the stairs. He retrieved his jacket and attempted to descend the stairs, but Burkes, armed now with a clothes iron, began swinging at his head. (Tr. pp. 671-672). Appellant testified that Burkes struck him with the iron, then came after him with a curtain rod. (Tr. p. 672). Only then, Appellant claimed, did he finally snap, striking her four times in the face. (Tr. p. 672). Appellant then departed for Woodall's house, leaving Burkes crying, and evidently conscious, on her cousin's bedroom floor. (Tr. p. 673).
 {¶ 28} Appellant argues that the jury heard two versions of what happened to Ms. Burkes on the night that she was beaten: the victim's account and the one that he provided. Appellant takes issue with the fact that the jury evidently chose to believe Ms. Burkes instead of himself and asks this Court to override the jury's decision. This Court is loath to accept such an invitation.
 {¶ 29} The record reflects that there was substantial, even overwhelming, evidence supporting Appellant's conviction for felonious assault. The trial court instructed the jury that it could find Appellant guilty of attempted murder, felonious assault, or aggravated assault. With respect to the aggravated assault, the trial court instructed as follows:
 {¶ 30} "Before you can find the defendant guilty of the lesser included offense of aggravated assault, you must find the state has proved beyond a reasonable doubt that * * * the defendant knowingly, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, knowingly caused serious physical harm to Sabrina Burkes." (Tr. p. 778).
 {¶ 31} The court further instructed the jury that,
 {¶ 32} "If all of you are unable to agree on a verdict of either guilty or not guilty of felonious assault, then you will continue your deliberations to decide whether the state has proven beyond a reasonable doubt all of the essential elements of the lesser included offense of aggravated assault." (Tr. p. 779).
 {¶ 33} Ultimately, the jury discounted Appellant's portrayal of the incident and concluded that what occurred here was a felonious assault, not an incident provoked by Burkes. Substantial evidence, aside from the victim's testimony, contradicted the account Appellant offered at trial. Moreover, inconsistent statements Appellant made to police immediately after the incident damaged his overall credibility. When police first confronted Appellant with the information about Burkes' beating, he denied any knowledge of the incident. The jury might have reasonably concluded that Appellant's contradictory trial testimony, offered nearly a year after the incident, was a fabrication.
 {¶ 34} Appellant's account of the incident was impugned by other objective factors, as well. For example, Appellant testified that when he left Burkes after the beating, she was awake and crying. All of the emergency personnel who were called to the scene in the wake of the 911 call, however, testified that she was unconscious and unresponsive.
 {¶ 35} In the videotaped interview with police no more than 24 hours after the attack, Appellant appeared relatively unscathed, undermining his claim that Burkes had instigated the attack. The videotape also depicts Appellant's casual acceptance of the revelation that his girlfriend, a woman for whom he professed to care deeply, had been attacked. Not once during the interview did Appellant inquire of the officer conducting the interview about Burkes' condition or whereabouts. Surely, such disregard was not lost on a jury.
 {¶ 36} Witnesses testified, albeit somewhat inconsistently, that the relationship between Appellant and Burkes was volatile and that the two had been fighting off and on during the 24 hours that led to the incident. Rhonda Woodall testified that when Appellant left her house on the night of the incident, apparently heading toward Ms. Burkes' house, he was in a foul mood. (Tr. pp. 496-497). When she found him later, he was shirtless, agitated and spattered with blood. Both the cousin and the friend placed Appellant at Burkes' house right around the time of the beating. Finally, Woodall testified that several months after the incident that prompted the instant charges Appellant attacked her, threatening to, "do [her] like [he] did Sabrina." (Tr. p. 505).
 {¶ 37} While there are inconsistencies in the various accounts provided by the witnesses who testified in this case, these slight inconsistencies do not necessarily compromise the jury's verdict. A jury is entitled to believe all, part, or none of a witness' testimony. SeeBaker, supra, at para. 25 of the syllabus. Credibility determinations are the exclusive province of the jury. State v. Hill (1996),75 Ohio St.3d 195, 205, 661 N.E.2d 1068; and State v. Barnes (2002), 7th Dist. No. 00 BA 44, 2002-Ohio-1158.
 {¶ 38} Where the record reflects conflicting testimony and where either party's version may be true, this Court has no authority to pick and choose among the versions presented. State v. Gore (Feb. 17, 1999), 7th Dist. No. 94 CA 97, at *2. "Instead, [this Court] must accede to the [trier of fact] who is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., quotingSeasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Consequently, we conclude that the verdict was not against the manifest weight of the evidence, overrule this assignment of error and affirm the judgment of the trial court on this issue.
 {¶ 39} In his second assignment of error, Appellant contends as follows:
 {¶ 40} "THE TRIAL COURT ERRED IN FAILING TO GIVE THE JURY INSTRUCTIONS FOR THE LESSER INCLUDED OFFENSE OF ASSAULT ORC 2903.13."
 {¶ 41} Because this issue was not raised in the trial court, the doctrine of waiver prevents us from its consideration. Crim.R. 30 governing jury instructions in criminal cases provides that, "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." See Crim.R. 30(A). Failure to do so will result in a waiver of the issue on appeal.
 {¶ 42} The record reflects that Appellant never requested a jury instruction on the offense of simple assault. Instead, during summation, his trial counsel conceded that the evidence supported a conviction for aggravated assault. Specifically, counsel argued:
 {¶ 43} ". . . The judge is going to give you an instruction on felonious assault which is what the government charged him with doing. The second instruction relates to a charge called aggravated assault, and the judge will instruct you that aggravated assault is a lesser included offense of felonious assault * * * The judge's instruction describes for you what the conduct is, what you must find before you can make an informed decision as to what actually should happen with this defendant.
 {¶ 44} "The charge of aggravated assault as it's found in the Ohio code states as follows: No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim, that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause serious physical harm to another. That's what happened last February 23rd. That's what Vincent Lewis told you, and that's the only evidence that you have as to what happened." (Tr. pp. 754-755) (Emphasis added.)
 {¶ 45} Accordingly, in light of the fact that the thrust of Appellant's trial defense was that the jury should convict him of aggravated assault and not felonious assault because Burkes had provoked the beating, no rational jury could have found him guilty of mere assault.
 {¶ 46} Absent plain error, the failure to request a particular jury instruction is waived. State v. Thrasher (January 21, 1994), 2nd Dist. Nos. 2996, 2997. The failure to give a jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been different. State v. Wood (1992),81 Ohio App.3d 489, 493, 611 N.E.2d 418; Crim.R. 52(B); and State v.Demiduk (June 24, 1998), 7th Dist. No. 96-C0-16, citing State v. Walker
(1981), 2 Ohio App.3d 483, 442 N.E.2d 1319.
 {¶ 47} Plain error is defined as, "obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221. The record reflects no plain error in this matter.
 {¶ 48} Even if Appellant had asked for an assault instruction, he would not have been entitled to one given the facts of this case. A simple assault under R.C. § 2903.13 occurs where one knowingly causes or attempts to cause physical harm, or recklessly causes another serious physical harm. A lesser included offense of felonious assault, assault is typically a misdemeanor of the first degree. State v. Ray (Sept. 8, 1997), 7th Dist. No. 96-BA-12 and R.C. § 2903.13(C).
 {¶ 49} In the instant case, the trial court would have been obliged to instruct the jury on the offense of assault had there been evidence either disputing the extent of Burkes' injuries or indicating that the seriousness of her injuries was due to Appellant's reckless conduct. See, R.C. §§ 2903.11(A)(1) and 2903.13(A) (B); Statev. Brooks, 12th Dist. No. CA2001-01-001, 2001-Ohio-8655 and State v.Wong (1994), 95 Ohio App.3d 39, 641 N.E.2d 1137.
 {¶ 50} There was no evidence presented in this case to support either scenario. First, there is no credible dispute as to the serious nature of Ms. Burkes' injuries. R.C. § 2901.01(E) defines serious physical harm as,
 {¶ 51} "* * *
 {¶ 52} "(2) Any physical harm which carries a substantial risk of death;
 {¶ 53} "(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;
 {¶ 54} "(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary serious disfigurement;
 {¶ 55} "(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain." R.C. § 2901.01(E)(2)-(5).
 {¶ 56} In State v. Edwards (1992), 83 Ohio App.3d 357, 360,614 N.E.2d 1123, the victim sustained a two-centimeter cut above an eyebrow that required a few stitches. The court in that case held that such an injury was serious under R.C. § 2901.01(E)(4). Under the circumstances, this Court has no hesitation concluding that the injuries sustained by Ms. Burkes constituted serious physical harm.
 {¶ 57} The record also reflects that there is no evidence on which a reasonable jury could conclude that Burkes' attack and its resulting injuries were the product of reckless rather than knowing or intentional conduct. In order to be convicted of felonious assault, a defendant must act "knowingly." R.C. § 2901.22(B) provides that, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." In contrast, under R.C. § 2901.22(C), a defendant acts in a "reckless" fashion when he is aware that there is a risk or chance that the prescribed result may occur, but he nevertheless chooses to engage in the act and decides to run the risk. State v. Easley (June 20, 2000), 10th Dist. No. 99AP-703; citing Edwards, supra at 361.
 {¶ 58} Even if this Court accepted Appellant's version of the incident, we must conclude from the record that Appellant's actions here were intentional and that he acted "knowingly" under R.C. § 2901.22(B). The record establishes that when Appellant repeatedly struck Burkes' face with his closed fist, he certainly knew he would cause physical damage. What occurred here was not the result of a poor risk assessment. Under the circumstances, an assault instruction was not warranted in this case and Appellant's second assignment of error is overruled.
 {¶ 59} In his third assignment of error, Appellant complains that,
 {¶ 60} "THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBIT 5 AND STATE'S EXHIBIT 7."
 {¶ 61} Appellant argues here that the trial court erred in admitting two photographs of Ms. Burkes following the attack.
 {¶ 62} Evid.R. 403 provides for the mandatory exclusion of relevant evidence where, "* * * its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The trial court may also exclude evidence pursuant to Evid.R. 403 where its, "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." The trial court's decision to admit or exclude photographic evidence under Evid.R. 403 are purely discretionary. State v. Maurer (1984), 15 Ohio St.3d 239, 264,744 N.E.2d 175. This Court will not disturb such rulings absent a showing that the trial court abused its discretion and caused material prejudice to the defendant. State v. Martin (1985), 19 Ohio St.3d 122, 129,483 N.E.2d 1157.
 {¶ 63} In the instant case, the trial court initially ruled that only State Exhibit 7 would be admitted. According to the trial court, "one picture says enough." (Tr. p. 622). Later, however, the court ruled that State's Exhibit 5 could also go to the jury. Although the court gave no reason for its decision to allow the second photo to go to the jury, it is clear that the two, viewed together, provide a more comprehensive illustration of the extent of the injuries than a single photograph presents.
 {¶ 64} Photographs of the body and the crime scene are admissible. State v. McGuire (1997), 80 Ohio St.3d 390, 395,686 N.E.2d 1112. Exhibit 7 shows Burkes' face. She appears bruised, bloody, and unconscious. An oxygen mask is attached to her face and a plastic brace encases her neck. She appears cocooned by an array of wires, tubes and other hospital related apparatuses. State Exhibit 5, on the other hand, depicts Burkes' chest area and specifically, her left breast, which appears terribly bruised. More importantly, as Appellee pointed out at trial, the bruises depicted in Exhibit 5 appear to be round or fist-shaped. Appellee argued that the injuries depicted in Exhibit 5 rebut Appellant's testimony that he only struck the victim in the face and that most of her injuries occurred when she accidentally fell down the stairs.
 {¶ 65} The trial court apparently agreed. Appellant proposes nothing, certainly no caselaw or other authority, otherwise demonstrating that these two photos were admitted improperly. Consequently, this assignment of error is also overruled.
 {¶ 66} In his fourth assignment of error, Appellant maintains,
 {¶ 67} "THE TRIAL COURT ERRED IN NOT ADMITTING CERTAIN PORTIONS OF THE DEFENDANT'S TESTIMONY ON DIRECT EXAMINATION."
 {¶ 68} Appellant sought at trial to offer certain testimony he apparently deemed helpful. Unfortunately, a record of this testimony was not made and Appellant has not preserved this issue for appeal.
 {¶ 69} At the outset, we must note that Appellant cannot point to the substance of the testimony he sought to present at trial because after an initial objection was granted, trial counsel failed to request an opportunity to make an offer of proof so that this Court could review the issue. Based on the record before us, this Court cannot ascertain what the barred evidence was or what the trial court's grounds were for its exclusion.
 {¶ 70} Appellant directs this Court to the following passage, which he claims amounts to a specific objection by his counsel to the trial court's decision barring the testimony at issue:
 {¶ 71} "[D]uring the direct examination of the defendant, there was an objection raised to questioning regarding the complaining witness's (sic) history. The court had previously permitted other acts evidence used against the defendant and yet refused other acts evidence against the complaining witness. The testimony would have been that the complaining witness has a history —
 {¶ 72} "* * *
 {¶ 73} "— of aggressive behavior, that the witness has a history of violent behavior specifically toward the defendant in this case.
 {¶ 74} "Secondly, during the direct examination of the defendant, there were several objections made purportedly on hearsay grounds. Every out-of-court statement is not hearsay, every out-of-court statement doesn't fit —
 {¶ 75} "* * *
 {¶ 76} "Doesn't need an objection to the hearsay rule. Hearsay is not admissible if the matter asserted is presented to prove the fact or the matter that is actually asserted in the out-of-court statement. Questions particularly or statements of the ilk of come back here, you mother fucker, are not offered to prove the matter asserted and therefore cannot be hearsay. The defendant would have testified as to several conversations which would have given rise to the demeanor of various parties involved in this matter
 {¶ 77} "* * *
 {¶ 78} "The prosecutor objected and the court summarily granted or sustained each objection whenever it had to do with any out-of-court statement, whether it was hearsay or not." (Tr. pp. 717-719).
 {¶ 79} It is Appellant's responsibility to affirmatively demonstrate error on appeal. Wray v. Parsson (1995), 101 Ohio App.3d 514,518, 655 N.E.2d 1365; and App.R. 9. Counsel's non-contemporaneous generalized soliloquy does little to preserve the record on his client's behalf. We cannot discern from the above the objections to which counsel is apparently referring nor can we determine the nature of Appellant's specific evidence. It is not this Court's job to search the record in an effort to ferret out the basis for Appellant's claims. See State v.Watson (1998), 126 Ohio App.3d 316, 321, 710 N.E.2d 340. Accordingly, to the extent that proceedings in the trial court are missing from the record, this Court must presume that the proceedings before the trial court were proper. State v. Brandon (1989), 45 Ohio St.3d 85, 87,543 N.E.2d 501.
 {¶ 80} Assuming this Court could rule on the merits of this assignment of error, it appears that Appellant still would not prevail. The admission or exclusion of relevant evidence rests with the sound discretion of the trial court. State v. Sage, 31 Ohio St.3d 173, 180,510 N.E.2d 343. Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party challenging its admission has been materially prejudiced. Maurer, supra at 265.
 {¶ 81} Appellant is apparently arguing that the trial court impermissibly barred him from presenting evidence of specific instances of conduct by the victim to corroborate his claims that she was the aggressor on the night of the incident. While it is indisputable that a defendant can introduce character evidence by reputation or opinion testimony consistent with the limitations of Evid.R. 405(A), Evid.R. 405(B) bars the accused from introducing specific instances of misconduct by the victim to prove her role as the initial aggressor. See, State v.Barnes (2002), 94 Ohio St.3d 21, 24, 759 N.E.2d 1240. Accordingly, it would not be an abuse of discretion for the trial court to bar Appellant from testifying about past altercations with the victim.
 {¶ 82} Since we find no merit in any of Appellant's assignments of error, this Court hereby affirms the judgment entered by the trial court.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.