[Cite as *Cincinnati v. Gilbert*, 2013-Ohio-4145.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NOS. C-120626 |
| | | C-120643 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. A-1006196 |
| | : | *O P I N I O N.* |
| vs. | : | |
| RICHARD GILBERT, | : | |
| and | : | |
| LEE GILBERT, | : | |
| Defendants-Appellees/Cross-Appellants. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 25, 2013

*John P. Curp*, City Solicitor, *Terrance A. Nestor* and *Donald W. Harper, II,* Assistant City Solicitors, and *McMahon Degulis LLP* and *Erica M. Spitzig* for Plaintiff-Appellant/Cross-Appellee*,*

*The Blessing Law Firm, William H. Blessing* and *Angela L. Wallace*, for Defendants-Appellees/Cross-Appellants.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}     In four assignments of error, plaintiff-appellant/cross-appellee city of Cincinnati claims that the trial court erred when rendering its decision in this appropriation case.  Defendants-appellees/cross-appellants Richard and Lee Gilbert raise one assignment of error in their cross-appeal.  We affirm.

**The Case Below**

{¶2}     In 2007, the Gilberts brought a direct action in this court asking for a writ of mandamus to compel the city of Cincinnati to commence an appropriation action to compensate them for the taking that resulted from systemic overflows of raw sewage onto their property caused by the inadequacy of the Brittany Acres Pump Station, the station that processed raw sewage for the area.  The Gilberts had purchased the Anderson Township property in 1998.  This court denied the request, but later reopened the matter when the Gilberts presented newly-discovered evidence.  This court granted the writ as it related to the physical taking of the property caused by the overflows.  *State ex rel. Gilbert v. City of Cincinnati*, 1st Dist. Hamilton No. C-070166, 2009-Ohio-1078.  The Ohio Supreme Court affirmed that decision.  *State ex rel. Gilbert v. City of Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706.

{¶3}     The city filed this appropriation action in 2010.  The matter proceeded to a jury trial.  The Gilberts presented evidence of the diminution of the value of their property as a result of the overflows.  Their expert explained the impairment of their use of the property as a result of the discharges, and calculated the year-by-year value of the Gilbert's loss of use during the period from 1998, when

2

they had purchased the property, through 2009, when the pump station was repaired and the overflows ceased. The total amount of the loss of use was $209,987.

{¶4} The city argued that only the narrow area around the creek at issue—the only area that was physically involved with the raw sewage—was subject to taking. Its employees testified as to value without consideration of the sewage stench's effect on the uninvaded portion of the property.

{¶5} The jury agreed with the Gilberts and awarded $209,987 as the value of the property taken. It made no award for damages to the property apart from the amount it set for compensation for the taking. After a subsequent hearing, the trial court adopted the Gilbert's interest calculation, which was based on a calculation "using the particular legal interest rate for each year in which there was an appropriation." In so doing, the trial court rejected the city's argument that the applicable interest rate was three percent—the statutory interest rate in effect on the date of judgment. At that time, the trial court also denied the Gilbert's request for attorney fees.

**The Damage Award**

{¶6} The city's first three assignments of error attack the premise that the Gilberts could recover for the stench caused by the sewage being dumped on their property as a taking. The city argues first that the only taking that occurred was limited to the immediate area upon which sewage overflowed. Any problems associated with the odor, the city asserts, were an element of damages to the remaining property. The city's second assignment claims that the trial court should not have allowed an expert to testify as to the loss resulting from that odor in terms

of a taking. The essence of the city's argument is that any such award is in the nature of damages. It is not, in itself, a taking.

{¶7} Ohio courts have consistently held that when the state appropriates land under its power of eminent domain, the landowner is entitled to a remedy consisting of two elements: (1) compensation for the property taken, and (2) damages for injury to the property which remains after the taking, i.e., the residue. *See, e.g., Hurst v. N. Seventh St. Church of Christ*, 12th Dist. Butler No. CA90-10-204, 1991 Ohio App. LEXIS 3142 (July 1, 1991); R.C. 163.14.

{¶8} "Compensation" means the sum of money which will compensate the owner of the land actually taken or appropriated; that is, it is the fair market value of the land taken. *Norwood v. Forest Converting Co.*, 16 Ohio App.3d 411, 415, 655 N.E.2d 1365 (9th Dist.1984), citing 38 Ohio Jurisprudence 3d, Eminent Domain, Section 103, 154-155 (1982). "Damages," in the strict sense in which the term is used in an appropriation proceeding, means an allowance made for any injury that may result to the remaining lands by reason of the taking. *Id.*

{¶9} Courts—including this court—have concluded that the temporary nuisances that go along with a temporary taking can be part of the taking. "Evidence of temporary inconvenience, dirt, noise, and the like are admissible *in determining the value of the temporary easement.*" (Emphasis added.) *Wray v. Deters*, 111 Ohio App.3d 107, 111, 675 N.E.2d 881 (1st Dist.1996), citing *Wray v. Parrson*, 101 Ohio App.3d 514, 655 N.E.2d 1365 (9th Dist.1995). In that context, the "temporary easement" was the takings part of the calculation, not the damages portion. In *Deters*, this court counted not just the physical trench dug into the property as a

taking, but also "all the attendant noise, danger, annoyance, dirt and disruption of life." *Id.* Quoting the Ninth Appellate District, we concluded that

> such temporary conditions that impair the enjoyment of the residue are properly considered in determining the fair market value of a temporary taking because they are the kinds of factors that an ordinarily prudent business person would consider in establishing rental value.

*Id.*, quoting *Parsson*, at 519, 655 N.E.2d 1365.

{¶10} The difference between takings and damage to the residue is the permanence of the damages. For example, if the city had built a sewage treatment plant on the Gilberts' property, then the odor would be damage to the residue because it would be permanent. In *Roseville v. Thompson*, 58 Ohio App.3d 29, 567 N.E.2d 1334 (5th Dist.1989), the Fifth Appellate District addressed a case in which just that had occurred. It held that "this sewage plant is to be constructed solely on the property of appellees. The *damages* that will be suffered as to the residual property by both the odor and the potential leakage into the water supply are unique." (Emphasis added.) *Id.* at 32. But, where the taking and damage are temporary, both can be compensated under the taking portion of the award.

{¶11} In sum, these cases indicate that the nuisance compensation can either be accomplished through considering the amount of the temporary taking, or as compensation for the damage to the residue. As the Ninth Appellate District noted,

> the damages to the residue are the decrease in property value *less a credit for the amount paid in compensation for the taking.* * * *

5

> As the amount paid for the temporary easement is analogous to rent and is only paid to compensate the property owner for the use of the property for the period of the easement, it should not [be] considered in figuring the damages to the residue.

*Parsson* 101 Ohio App. 3d at 521-522, 655 N.E.2d 1365. So, as long as there is no double recovery, the award is proper. We overrule the city's first two assignments of error.

{¶12} In its third assignment of error, the city argues that instructions to the jury regarding this loss were improper and created the possibility of a double recovery. In this case, there was no award for damages, only a compensation award for the taking. Therefore, any error as to how the jury was instructed regarding compensation versus damages was harmless because it did not create a double recovery. *See Farmers Ins. of Columbus, Inc. v. Lister*, 5th Dist. Fairfield No. 2005-CA-29, 2006-Ohio-142, ¶ 50. Since there was no double recovery, the award was proper. We overrule the city's third assignment of error.

### The Interest Rate on the Judgment

{¶13} In its fourth assignment of error, the city argues that the trial court erred when it computed the interest due on the award. We disagree.

{¶14} R.C. 163.17 provides that, in an appropriation action where the appropriating agency took possession of the property prior to paying the award, interest shall be calculated "from the date of the taking to the date of the actual payment of the award," and "shall be the rate of interest for judgments as set forth in section 1343.03 of the Revised Code." Prior to 2004, R.C. 1343.03 set the statutory interest rate at ten percent per annum. As of June 2, 2004, the interest rate was set

6

at the federal short-term rate plus three percent. *See* 2003 Sub.H.B. No. 212, 150 Ohio Laws, Part III, 3417. The amount is adjusted annually.

{¶15} The uncodified law in 2003 Sub.H.B. 212 states that the change in the statutory interest-rate calculation was to be applied to pending cases in a specific manner. *See* 2003 Sub.H.B. 212, Section 3, 150 Ohio Laws, Part III, 3421; *Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 2008-Ohio-4542, 895 N.E.2d 145, ¶ 8.

> In actions pending on the effective date of this act, the interest rate provided for in section 1343.03 of the Revised Code prior to the amendment of that section by this act shall apply up to the effective date of this act, and the interest rate provided for in section 1343.03 of the Revised Code as amended by this act shall apply on and after that effective date.

2003 Sub.H.B. 212, Section 3, 150 Ohio Laws, Part III, 3421.

{¶16} In its determination of the interest rate in this case, the trial court used the "particular interest rate for each separate year in which there was an appropriation." Since the action was commenced after the effective date of the statute, there is no reason not to simply apply the statute as written. Contrary to the Gilbert's position in their brief, they were not entitled to use the ten percent interest rate through 2004. The action was not pending at the time the statute changed, and thus that particular, uncodified provision of the statute does not apply. The statute calls for a variable interest rate to be applied for each successive tax year, and the trial court properly determined the interest rate in this case. *See Jones v. Progressive Preferred Ins. Co.* 169 Ohio App.3d 291, 2006-Ohio-5420, 862 N.E.2d 1054, ¶ 22 (in the context of prejudgment interest, applying the interest rate for each

7

year from the accrual date forward). We overrule the city's fourth assignment of error.

**Attorney Fees**

{¶17} The Gilberts claim that they are entitled to attorney fees and costs because the city never made a good-faith offer to settle. The Revised Code provides that a property owner is entitled to recover costs and expenses, including attorney and appraisal fees, that the owner actually incurred when the government fails to do so. R.C. 163.21. But that award is contingent upon the owner providing the agency with an appraisal or summary appraisal *of the property being appropriated* or with the owner's sworn statement setting forth the value of the property and an explanation of how the owner arrived at that value no less than 50 days prior to the date initially designated by the court for trial. R.C. 163.21(5)(b).

{¶18} The Gilberts claim that their deposition testimony during the mandamus action before this court met that requirement. But that testimony was to the total value of the land when the Gilberts were trying to make the city purchase the whole parcel under a regulatory-takings, investment-backed expectations theory. This court and the Ohio Supreme Court rejected that theory, and the Gilberts made no subsequent presentation of the value of the property being appropriated under the current temporary, partial taking theory.

{¶19} The purpose of R.C. 163.21 is to facilitate the settlement of appropriation cases. The reason an owner is to provide the information regarding the value of the property is to allow the government to make an informed offer to purchase or compensate. The Gilberts' deposition testimony—a recitation of the value of the entire property listed years before trial by the Hamilton County

8

Auditor—was wholly insufficient. Absent an appraisal or a statement under oath regarding the value of the property *actually taken*, the trial court was not required to award costs and attorney fees. We overrule the Gilberts' sole assignment of error.

**Conclusion**

{¶20} Having considered the assignments of error of both the city of Cincinnati and the Gilberts, we conclude that the trial court committed no error below. Therefore, we affirm its judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.