OPINION
{¶ 1} This is a delayed appeal from a judgment of the Mahoning County Court of Common Pleas entered after a jury found John Robinson ("Appellant") guilty of rape, felonious assault, and kidnapping. The trial court subsequently sentenced Appellant to three consecutive terms of imprisonment aggregating twenty-eight years and designated him a sexual predator under the auspices of R.C. § 2950.09(B). For the reasons that follow this Court affirms Appellant's convictions, but vacates his designation as a sexual predator in light of the Supreme Court's decision in State v. Jones (2001), 93 Ohio St.3d 391,754 N.E.2d 1252.
 {¶ 2} The incident at the heart of Appellant's conviction occurred on December 3, 1999. That afternoon, the victim encountered Appellant as she walked past his home on West LaClede Street in Youngstown. After a brief discussion, the victim evidently agreed to assist Appellant in his efforts to obtain some crack cocaine with the understanding that he would share some of it with her. Appellant accompanied the victim to her aunt's house where he purchased $20.00 worth of crack cocaine. The two then proceeded to Appellant's apartment where they apparently planned to ingest the drugs and engage in sexual intercourse.
 {¶ 3} Initially, the couple appeared to be getting along well. They shared the cocaine and discussed the idea of purchasing more. Appellant told police that he had planned to have sex with the victim before using more drugs, but experienced difficulty maintaining an erection during fellatio because of the drugs he had already consumed. The victim relayed that Appellant promised her he would get more cocaine but, "wanted to see what [she was] about first." According to the victim, Appellant then forced her to undress and raped her.
 {¶ 4} At some point that evening Appellant's upstairs neighbor, Gregory Crockett, entered the apartment. Crockett told police that when he arrived Appellant and the victim were comfortably naked and "acting like lovers." Crockett indicated that he gave Appellant $5.00, ostensibly to pay for the return of his television, and Appellant invited him to join in. Crockett then had intercourse with the victim. According to Crockett, "everything was cool. It was just people having a good time."
 {¶ 5} The victim described the incident differently. She told police that when Crockett arrived she was forced to have sex with him while simultaneously performing fellatio on Appellant. According to the two men, though, Crockett and the victim were alone when they had consensual intercourse since Appellant, frustrated because he could not maintain an erection, left the room. Afterward, Crockett went back to his own apartment where he drank himself to sleep.
 {¶ 6} Not long after Crockett returned home, the victim decided that she should leave. As she attempted to do so, however, Appellant dragged her back inside the apartment where he began choking and hitting her. In an apparent effort to escape, the victim tried to break the apartment's windows. Shattering one of the windows with her bare fist, she either jumped or fell out into the yard. Appellant followed her outside and continued to beat and kick her. Another upstairs neighbor, John West, heard the victim's cries and pulled her to safety. Appellant conceded that if West had not interfered, Appellant might have beaten the victim to death. Afterward, West helped the distraught victim dress before escorting her to her aunt's house.
 {¶ 7} The next day police arrested Appellant and Crockett in connection with the incident. Police interrogated the men and recorded their respective statements on videotape. Appellant vehemently denied that he or Crockett raped the victim. Appellant did admit, however, that he beat the victim, stating, "I'm looking at this for assault." Crockett also admitted having sex with the victim, but stressed that at least while he was there, the victim participated willingly. Moreover, according to Crockett, the beating must have occurred after he left because there had been no argument or struggle while he was in the apartment. The prosecution elected to try Appellant and Crockett jointly and introduced these statements in support of its case against the men. Neither man testified at trial.
 {¶ 8} The jury acquitted Crockett but convicted Appellant of rape, felonious assault, kidnapping. The trial court sentenced Appellant to ten years of incarceration on the rape count, eight years for felonious assault and ten years for kidnapping. The court ordered all three sentences to run consecutively and designated Appellant a sexual predator.
 {¶ 9} In his first assignment of error, Appellant contends that,
 {¶ 10} "The Trial Court erred when it allowed the State of Ohio to play for the jury the accomplice co-defendant's videotaped statement, T.p. 591, in violation of the Confrontation Clause of the U.S. Const. Amend. VI and XIV and the Ohio Constitution."
 {¶ 11} Appellant maintains that because he and co-defendant Crockett were tried jointly, the trial court should have prohibited the prosecution from introducing Crockett's videotaped statement at their joint trial. More specifically, Appellant complains that because Crockett did not testify, Appellant was never able to cross-examine or otherwise test the reliability of Crockett's videotaped statement to police. Appellant argues that under Bruton v. United States (1968), 391 U.S. 123,88 S.Ct. 1620, 20 L.Ed.2d 476, and the line of cases that developed from it, Crockett's statement should have been barred under the Constitution's Confrontation Clause.
 {¶ 12} Before addressing the merits of this assignment, however, we must first address the fact that Appellant did not preserve this issue for appeal. The record indicates that immediately prior to trial, Crockett moved in limine to bar the introduction of his statement. While Appellant joined Crockett's motion, he failed to renew the objection at trial when the prosecution played the videotape. To avoid waiver, a party must bring a contemporaneous objection to the alleged trial error in order to preserve that error for appellate review. This rule is well-settled and is fundamental to our adversarial system of justice.State v. Murphy (2001), 91 Ohio St.3d 516, 532, 747 N.E.2d 765.
 {¶ 13} Accordingly, we review the instant challenge to the admission of evidence under a plain error standard. State v. Jones
(2001), 91 Ohio St.3d 335, 347, 744 N.E.2d 1163. An error does not amount to plain error unless it was outcome determinative. In other words, the question this Court must ask itself is whether the error so adversely affected the substantial rights of the accused that it undermined the fairness of the process. Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution under only exceptional circumstances, and then only to prevent a manifest miscarriage of justice. State v. Thomas, 8th Dist. No. 78570, 2002-Ohio-4026, at P16.
 {¶ 14} In Bruton, the United States Supreme Court essentially held that an accused's rights to confrontation and cross-examination are violated when, during a joint trial with a non-testifying accomplice, the court admits a statement made by an accomplice outside of court which inculpates the accused. The Court further emphasized that this evidence offends the Confrontation Clause even when the trial court explicitly instructs the jury to disregard such evidence in determining the accused's guilt or innocence. Id. at 136-137.
 {¶ 15} The Confrontation Clause, as embodied in the Constitution'sSixth Amendment and made applicable to the states through theFourteenth Amendment (see, Pointer v. Texas (1965), 380 U.S. 400, 85 S.Ct. 1065;13 L.Ed.2d 923; and Davis v. Alaska (1974), 415 U.S. 308, 94 S.Ct. 1105;39 L.Ed.2d 347), provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In Bruton and its progeny, the Court underscored the notion that the accused's right to confront witnesses was intended to safeguard, "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing," at trial. Maryland v. Craig (1990), 497 U.S. 836,845, 110 S.Ct. 3157, 111 L.Ed.2d 666.
 {¶ 16} In Lilly v. Virginia (1999), 527 U.S. 116, 119 S.Ct. 1887,144 L.Ed.2d 117, the Supreme Court reexamined the admissibility of accomplice statements in the Bruton context. In Lilly, the state court concluded the accomplice statement involved was admissible under the deeply rooted, "statement against penal interest," exception to the hearsay rule. Thus, the statement was presumptively reliable. Id. at 125-126. In reversing that decision, the Supreme Court disagreed. The Court essentially reiterated its holding in Bruton and held that where the non-testifying accomplice's statement shifts blame for the crime to the defendant, such evidence was an affront to the Confrontation Clause. Id. at 133. In arriving at this conclusion the Court underscored the fact that,
 {¶ 17} "* * * due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence. The truth finding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." Id. at 132.
 {¶ 18} This Court agrees that where an accomplice's statement implicates the defendant, it is presumptively self-serving, unreliable and not within any firmly-rooted exceptions to the hearsay rule. Statev. Madrigal (2000), 87 Ohio St.3d 378, 387, 721 N.E.2d 52; citing,Lilly, supra. We also recognize that the right to confrontation is not absolute and, "does not necessarily prohibit the admission of [all] hearsay against a criminal defendant." Idaho v. Wright (1990),497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638. The state may deny the accused the right to cross-examination without violating the Confrontation Clause where the proffered out-of-court statement is, "so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." White v. Illinois (1992), 502 U.S. 346,357, 112 S.Ct. 736, 116 L.Ed.2d 848.
 {¶ 19} Circumstantial guarantees of trustworthiness are those that exist at the time the statement was made and do not include those that may be added by using hindsight. Id. at 820. Hearsay is sufficiently reliable to allow its admission even in the absence of cross-examination when it: (1) "[falls] within a firmly rooted hearsay exception," or (2) contain[s] "`adequate indicia of reliability.'" Ohio v. Roberts (1980),448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597. Statements against penal interest fall within a firmly-rooted exception to the hearsay rule, and as long as the evidence is not otherwise prohibited under the principles set forth in Bruton and Lilly, such statements are admissible. Madrigal, supra.
 {¶ 20} In the instant case, unlike the statements found to violate the Confrontation Clause in Bruton, Lilly and Madrigal, the contents of Crockett's statement do not implicate Appellant in the rape. In fact, Crockett's statement unquestionably exonerates Appellant, at least with respect to the rape, and therefore does not possess the reliability problems addressed in Bruton. Consequently, it was not unreasonable for Appellant's trial counsel to decide not to renew his objection to the statement when it was played for the jury.
 {¶ 21} Admittedly, Crockett's statement does contain remarks that reflect negatively on Appellant. For example, at the beginning of the interview Crockett comments that he, "want[s] to put this guy away and make things better for me." Moments later, Crockett states: "whatever I can do to help put this guy away because he's a rapist." As we explain in our discussion of Appellant's second assignment of error, however, to the extent that such remarks can be said somehow to incriminate Appellant, given the record before us we must presume that the trial court redacted those excerpts from the videotape prior to its presentation to the jury.
 {¶ 22} Under the circumstances, we cannot conclude under a plain error analysis that, but for the introduction of the statement, the jury would have acquitted Appellant. Consequently, it was not plain error to admit this evidence.
 {¶ 23} In his second assignment of error, Appellant argues that,
 {¶ 24} "The Appellant is unable to properly prosecute this appeal due to an incomplete record in violation of the United States and Ohio Constitution."
 {¶ 25} As noted above, the record reflects that immediately before opening statements were given, Crockett objected the introduction of his videotaped statement. Appellant, in a vague fashion, qualified the manner in which would join in the motion, indicating that he would object to the statement unless it was edited. (Tr. p. 338). While refusing to bar the tape altogether, the trial court agreed that some redaction was warranted. There followed a lengthy discussion concerning the logistics of this redaction. (Tr. pp. 350-358). In the end it was agreed that the court's personnel would run the tape and mute the redacted sections.
 {¶ 26} It is reasonably clear from the record that some parts of Crockett's statement were redacted, since, after chastising the parties because of the delay in their redaction request, the trial court ruled that excerpts from Crockett's statement were inadmissible. The following passage is demonstrative:
 {¶ 27} "THE COURT: * * * So that reference, ` because he is a rapist,' is properly deleted. The Defendant — so it's sustained in that regard. * * * to be fair to the Defendant Robinson, these things are prejudicial to him, and at least at this point there may be no right to confront the witness on that subject. However, if the Defendant Crockett takes the witness stand, the Prosecutor may very well be able to use these things that are being deleted against the Defendant Crockett in cross examination —
 {¶ 28} "MR. TAYOR: That's correct.
 {¶ 29} "THE COURT: — because it's part of his statement. I'm not sure this is just an exercise in futility, because everybody has said he's going to testify. But the next objection is to Page 15, Lines 21 and 22, which say, quote, `When John went upstairs, his nephew had told me that he had raped this girl. I was like, what?' Close quote. That should be deleted. And the Court sustains the objection to that particular area.
 {¶ 30} "The Defendant Crockett also objects to Page 24, Lines 14 through 23. Actually it should begin at Line 12 where the police officer asked the question, `Okay. Now, is there anything you want to tell me about Cowboy, period?' Cowboy, period? What is that? And the response is, `Yeah. He's a low-down dirty rapist dog, and he should get what he deserves,' close quote.
 {¶ 31} "And then there's a lot of other discussion in here about the Defendant Robinson raping the Defendant Crockett's sister. And then the objection continues on Page 25 * * * The Court feels that that likewise should be deleted all the way from Line 12 on Page 24 through Line 5 on Page 25. How that's going to be done, I don't know * * *." (Tr. pp. 350-352).
 {¶ 32} Unfortunately, as Appellant accurately concedes, the tape was not physically edited and no one bothered to record in any fashion the version of the videotape which was ultimately presented to the jury.
 {¶ 33} The scope of our review on appeal is confined to the trial court record as defined in Appellate Rules 12(A) 9(A). Lamar v.Marbury (1982), 69 Ohio St.2d 274. Although Appellant blames the Clerk of Courts for the inadequacy of the record on appeal, the record's shortcomings are actually attributable to Appellant. Under App.R. 9(B), it is the Appellant's burden to furnish a record, by transcript or otherwise, which supports the claimed error. Wray v. Parsson (1995),101 Ohio App.3d 514, 518, 655 N.E.2d 1355; and State v. Barnes, 7th Dist. 00BA44, 2002-Ohio-1158. Therefore, in presenting his assignments of error to this Court, Appellant must with provide us with a sufficient record of the facts, testimony, and evidentiary matters necessary to address these assignments. Id.
 {¶ 34} Appellant could have remedied the aforementioned deficiency had he complied with the dictates of App.R. 9(C), which provides as follows:
 {¶ 35} "In lieu of the record on appeal as defined in division (A) of this rule, the parties, no later than ten days prior to the time for transmission of the record pursuant to App.R. 10, may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented." Id.
 {¶ 36} Failing to cure his deficient record as required, Appellant now asks this Court to assume that Crockett's statement was not properly redacted. We cannot make such an assumption. In fact, it is well-settled that when the record lacks portions of the transcript necessary for resolution of assigned errors, the reviewing court has nothing to pass upon. Thus, as to those assigned errors, we have no choice other than to presume the trial court properly omitted the objectionable portions of Crockett's videotape as requested by counsel and as indicated by those portions of the transcript which are present in the record. Koruschak v.Smotrilla, 7th Dist. No. 99 CA 320, 2001-Ohio-3326 at P2; quoting, Knappv. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. See also, Allison v. Daniels, 7th Dist. No. 01 CA 86, 2002-Ohio-5027, at P67. Accordingly, this assignment of error is overruled.
 {¶ 37} Appellant's third assignment of error asserts that:
 {¶ 38} "Trial counsel failed to provide effective assistance of counsel pursuant to United States Const. Am. VI and XIV and the Ohio Constitution."
 {¶ 39} Appellant frames this issue in the following manner: "[w]hether counsel's failure to object to the playing of the Co-defendant-accomplice's out of court videotape statement amounts to ineffective assistance of Counsel."
 {¶ 40} Appellant argues that trial counsel was ineffective for failing to object to the state's decision to subject them to a joint trial. Appellant also complains that counsel was ineffective for failing to object to the introduction of evidence offered under Evid.R. 404(B) and, "to the State of Ohio playing the co-defendant-accomplice's video tape statement taken prior to trial by the Youngstown Police Department as well as the Appellant's videotape statement being published to the jury." As we explain below, none of these purported shortcomings amounts to ineffective assistance.
 {¶ 41} In determining whether counsel's performance was constitutionally deficient, our analysis is highly deferential. State v.Bradley, 42 Ohio St.3d 136, 142, 538 N.E.2d 373; citing Strickland v.Washington (1984), 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate that trial counsel was ineffective, Appellant must show that counsel's performance was so deficient and his, "* * * errors so serious that [he] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Strickland, supra at 687. Appellant must also demonstrate that counsel's ineptitude prejudiced the defense. Id., see also State v. Lytle (1976), 48 Ohio St.2d 391, 397, 358 N.E.2d 623, vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135,57 L.Ed.2d 1154. This case does not meet even the first of those thresholds.
 {¶ 42} Counsel's decisions with respect to filing motions and raising objections are matters of trial strategy and are afforded significant latitude. State v. Netherland (1999), 132 Ohio App.3d 263,264, 724 N.E.2d 1182. Even debatable trial tactics typically do not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 47, 402 N.E.2d 1189. Thus, to prevail on this issue, Appellant must overcome a presumption that the decisions of a properly licensed attorney constitute sound trial strategy. Strickland, supra at 689. On review, this Court cannot allow hindsight to distort our assessment of what was reasonable given trial counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70.
 {¶ 43} Joinder is governed by R.C. § 2945.13, which provides as follows:
 {¶ 44} "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."
 {¶ 45} As this provision suggests, the law favors joinder because a single trial will conserve time and expense and may minimize the potentially disparate outcomes that can result from successive trials before different juries. State v. Schiebel (1990), 55 Ohio St.3d 71,86-87, 564 N.E.2d 54, 71; State v. Torres (1981), 66 Ohio St.2d 340,343, 421 N.E.2d 1288; State v. Thomas (1980), 61 Ohio St.2d 223, 225,400 N.E.2d 401.
 {¶ 46} The interest in joint trials is not unrestricted, however. Under Crim.R. 14, if the defendant demonstrates that he is prejudiced by joinder with other defendants charged in the indictment, the court has authority to sever the defendants or provide other relief in the interest of justice. Accordingly, severance may be warranted where the court finds a serious risk that a joint trial would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Zafiro (1993), 506 U.S. 534,539, 113 S.Ct. 933; 122 L.Ed.2d 317. No such risk was present in the instant case.
 {¶ 47} Appellant offers nothing to substantiate his claim that trial counsel's failure to seek a severance of his and Crockett's trials operated to Appellant's detriment, nor has our examination of the record revealed any support for such a claim. See accord, State v. Woods (August 21, 1998), 7th Dist. No. 94 C.A. 129 (a mere assertion, without support regarding prejudice resulting from the trial court's decision, is insufficient to establish prejudice). We are therefore left to conclude that counsel's failure to object to the joint trial can be seen as sound trial strategy given the exculpatory nature of most of Crockett's statement.
 {¶ 48} Appellant next complains that trial counsel was ineffective for failing to object to inadmissible "other acts" evidence. According to Appellant, there was no physical evidence offered to corroborate the victim's claim that she had been raped. Essentially, then, the case boiled down to the allegations of the victim, someone Appellant has characterized as a, "drug using, drug addicted prostitute," against the statements of Appellant and Crockett denying that the rape had occurred. Appellant complains that but for the damaging and inadmissible "other acts" evidence the prosecution introduced against him, he would have received an acquittal on the rape charge.
 {¶ 49} In support, Appellant vaguely identifies the following three pieces of evidence that he maintains trial counsel should have attempted to bar: Crockett's statement to police; hearsay testimony from the detective who took Crockett's statement; and Appellant's statement to police.
 {¶ 50} As we noted in addressing Appellant's first and second assignments of error, Crockett's statement was not inadmissible under the Confrontation Clause, we must presume that the inadmissible portions of that statement were redacted, and even if the statement was objectionable Appellant has failed to demonstrate how its admission, largely exonerating him of rape, prejudiced his case.
 {¶ 51} The second piece of evidence to which Appellant takes issue was elicited during the testimony of Delphine Baldwin-Casey, a detective assigned to the case who took Crockett's statement. During direct examination, the prosecutor elicited the following from Detective Casey, without objection from Appellant's trial counsel, concerning her interview with Crockett:
 {¶ 52} "[H]e (Crockett) stated to me that his girlfriend by the name of Debbie had been raped before by John Robinson." (Tr. p. 585).
 {¶ 53} Appellant characterizes this testimony as highly prejudicial. While such evidence may have been objectionable and the record reflects that the trial court had previously barred the prosecution from introducing this part of Crockett's videotaped statement (See, Tr.p. 350-352), counsel's failure to object does not render him ineffective unless its introduction appears unrelated to any reasonable trial strategy. State v. Martin (1987), 37 Ohio App.3d 213, 215,525 N.E.2d 521. That strategy is reflected in part in the following passage from counsel's cross-examination of Detective Casey:
 {¶ 54} "Q. * * * [T]he first substantive thing [Crockett] says on the videotaped statement is he wants to do all he can for himself and put his guy away; right?
 {¶ 55} "A. Yes.
 {¶ 56} "* * *
 {¶ 57} "Q. Did you notice from his demeanor on the tape he was a little upset with Robinson?
 {¶ 58} "A. Yes.
 {¶ 59} "Q. I mean, he was ticked off because he felt that Robinson got him into this jackpot; right?
 {¶ 60} "A. Yes.
 {¶ 61} "Q. So he's essentially trying to throw down on Robinson as hard as he can and tell you everything he knows about the guy; do you agree?
 {¶ 62} "* * *
 {¶ 63} "A. I just really took it that he wanted to talk to me and tell me what happened, his version. That's how I took it.
 {¶ 64} "Q. The idea that he said that he wanted to put him away or send him away didn't really impact on you interview?" (Tr., pp. 605-606).
 {¶ 65} The preceding passage suggests that in not objecting to Detective Casey's hearsay from Crockett, trial counsel was trying to further the notion that Crockett had a motive to fabricate information about Appellant and that Crockett could not be relied upon to tell the truth about any aspect of this case. This is not an unreasonable tactic and, therefore, counsel's failure to object to such evidence does not render the legal assistance he provided Appellant constitutionally ineffective.
 {¶ 66} The last piece of evidence to which Appellant asserts his trial attorney should have objected was Appellant's videotaped statement. Appellant's brief, however, does not offer any basis for such an objection. During oral argument it was proposed that Appellant's statement was objectionable under the Rape Shield Act because in it he refers, albeit obliquely, to sexual misconduct involving other individuals. The issue has not been briefed by either party and is not properly before us. Simply because there was some brief reference to this matter during oral argument does not create an issue that this Court can properly address.
 {¶ 67} Even if this Court were to analyze the admissibility of Appellant's statement in light of the Rape Shield Act, we would still conclude that the evidence of other sexual misconduct was not inadmissible given the facts of this case. Ohio's Rape Shield Law, codified under R.C. § 2907.02(D) in relevant part provides as follows:
 {¶ 68} "* * *
 {¶ 69} "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59
of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 70} Entitled, "Proof of defendant's motive," the exceptions to the rule are found under R.C. § 2945.59, and provide that:
 {¶ 71} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 72} R.C. § 2945.59 must be construed in light of Evid.R. 404(B). State v. Wright (December 6, 2001), 4th Dist. No. 00CA39; citingState v. Broom (1988), 40 Ohio St.3d 277, 281, 533 N.E.2d 682.; and Statev. Clemons (1994), 94 Ohio App.3d 701, 641 N.E.2d 778. Cases addressing the admissibility of "other acts" evidence in light of the rape shield statute are plentiful and reflect that such evidence, even in rape prosecutions, is routinely admitted in conjunction with Evid.R. 404(B).
 {¶ 73} Evid.R. 404(B) allows for the admission of other acts evidence where it is deemed probative of the defendant's, motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or any other relevant purpose. See, e.g. Wright, supra (evidence of three year old rape involving another victim was admissible under R.C. § 2945.59 because it was relevant to an element of the crime); State v. Cornell (Nov. 27, 1991), 10th Dist. No. 59365 (instances of sexual misconduct with other young male victims admissible to show defendant's scheme or modus operandi); State v. McGill (Dec. 8, 2000), 2nd Dist. No. 99 CA 25 (evidence of defendant's previous conviction for child endangering in trial for rape and gross sexual imposition against same victims to demonstrate his willingness to use force against them); and State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00 CA 7604 (evidence of defendant's past sexual activities and predilections relevant to establish intent).
 {¶ 74} The cases cited above reflect tacit recognition of the fact that Evid.R. 403(A) favors the admissibility of evidence. State v.Clancy, 4th Dist. No. 01CA41, 2002-Ohio-2605 at P15. Unless relevant other acts evidence violates the general rule regarding propensity evidence, it is properly admitted. State v. Roe (1989), 41 Ohio St.3d 18,23, 523 N.E.2d 1351. Accordingly, had the trial court been presented with the opportunity to do so, it could have concluded that Appellant's statements, which vaguely refer to unspecified sexual misconduct or encounters with a "black prostitute" and another unidentified individual, were admissible to demonstrate that the rape with which Appellant was charged in the instant case was part of a pattern of behavior, scheme, or modus operandi.
 {¶ 75} Furthermore, failure to object to the admission of other crimes evidence will not amount to ineffective assistance of counsel unless it can be shown that such evidence was unrelated to any legitimate trial strategy. Martin, supra, at 215. In Martin, the reviewing court concluded that trial counsel was ineffective after noting the following, "[n]o consistent trial strategy c[ould] be detected after a thorough reading of the record. Defense counsel appeared to be groping around trying to get favorable supporting testimony from the state's witnesses and, as a consequence, invited into the record substantial adverse testimony, much of which was inadmissible had the state attempted to elicit it." Id. Accordingly, the court concluded that Martin was one of those rare cases where the Strickland test has been satisfied and the defendant did not receive a fair trial because counsel was ineffective.
 {¶ 76} The instant matter does not present us with such a case. The record reflects that trial counsel possessed a reasonably well-constructed theory of defense and knowledge about the issues involved. Further, during his cross-examination of the prosecution's witnesses, the victim in particular, he was able to elicit testimony consistent with his theory on defense while substantially damaging the witness' credibility in the process. Since the case largely hinged on the credibility of the victim's account of the incident, counsel's strategy, to vigorously attack that credibility, was sound. A reviewing court does not find defense counsel ineffective merely because the outcome of the trial was unfavorable to the defendant. State v. Waldrop (Sept. 10, 1998), 10th Dist. No. 98AP-102. A competent strategy is not necessarily a winning strategy. State v. Howard (Jan. 18, 1996), 10th Dist. No. 68977; citing, State v. Hart (1988), 57 Ohio App.3d 4, 566 N.E.2d 174. Therefore, Appellant's third assignment of error is overruled.
 {¶ 77} In his fourth assignment of error, Appellant states,
 {¶ 78} "The trial court erred in labeling the Appellant a sexual predator."
 {¶ 79} Appellant complains that in light of the Ohio Supreme Court's recent decision in State v. Jones (2001), 93 Ohio St.3d 391,754 N.E.2d 1252, once the state opted to dismiss the sexually violent predator classifications set forth in the indictment under counts two, four and five, R.C. § 2950.09(B)(4) (now recodified under R.C. § 2950(B)(5)) precluded the trial court from proceeding to a sexual predator classification hearing. In this assignment, Appellant is correct.
 {¶ 80} R.C. § 2950.09(B)(4) bars the trial court from proceeding to a sexual predator classification hearing under the following circumstances:
 {¶ 81} "A hearing shall not be conducted under division (B) of this section regarding an offender if the sexually oriented offense in question is a sexually violent offense and the indictment, count in the indictment, or information charging the offense also included a sexually violent predator specification."
 {¶ 82} The Court in Jones held that the above provision forbids the trial court from classifying a defendant as a sexual predator once that defendant has been acquitted of a sexually violent predator classification. Id. at 397. Appellant in the instant case was not acquitted of the sexually violent predator classification. Instead, at the trial court's insistence the prosecution voluntarily dismissed this charge. Nevertheless, given that the language adopted in R.C. §2950.09(B)(4) refers only to the charging instrument, making no distinction between dismissals or acquittals, it appears that Appellant's fourth assignment of error has merit. While we are uncomfortable with the application of the Court's decision in Jones, that decision compels this Court to vacate the trial court's decision to classify Appellant as a sexual predator.
 {¶ 83} Accordingly, this Court hereby affirms Appellant's conviction, but vacates his classification as a sexual predator in light of the Ohio Supreme Court's holding in State v. Jones (2001),93 Ohio St.3d 391, 754 N.E.2d 1252.
Vukovich, P.J., concurs.
DeGenaro, J., dissents; see dissenting opinion.