VILLAGE OF ROSEVILLE, APPELLANT, *v.* THOMPSON ET AL., APPELLEES.

(No. CA-376—Decided June 15, 1989.)

*Jeffrey A. Hooper,* for appellant village of Roseville.

*Walter J. Howdyshell,* for appellees Paul D. and Margene Thompson.

MILLIGAN, J. Appellant has failed to comply with Local App. R. 4. Nevertheless, in the interest of justice, we consider the cause on its merits.

Although appellant village of Roseville identifies this case as an appropriation proceeding "to acquire the necessary property for the construction of a sanitary sewer," this was, in fact, an R.C. 719.01(J) appropriation

of 64.752 acres of land for a sewage plant and .11 acre for sewer line service. The acreage is located in both Muskingum and Perry Counties and the separate cases were consolidated and tried in Perry County.

The Perry County Court of Common Pleas entered judgment on a jury verdict fixing $39,000 for the value of the land taken and $31,000 for damages to the residue. This verdict was within the perimeters of evidence produced by expert appraisers.

The village of Roseville appeals, assigning two errors:

"I. The trial court's decision to overrule the plaintiff's motion *in limine* by reason of the plaintiff's failure to comply with Rule 6(D) of the Ohio Rules of Civil Procedure is contrary to law.

"II. The trial court's decision to overrule the plaintiff's motion *in limine* and to allow the defendant[s] to introduce evidence as to alleged residual damage to defendant's [*sic*] property which damages were not unique to the defendant[s] but which would be shared by all residents of the area in common is contrary to law."

At pretrial, the appellant sought to limit the permissible scope of evidence admissible upon the issue of damages to the residue. Specifically, it sought to exclude any evidence of odor from the sewer plant as affecting the appellees' property.

The motion *in limine* was filed on April 27, 1988 and was heard following jury selection, opening statements, and jury view. The trial court overruled the motion, citing, *inter alia,* want of compliance with Civ. R. 6(D).

Hopkins, appellees' appraiser, after being qualified and identifying his appraisal technique, testified that the value of the entire one-hundred sixty-seven acres was $139,192 and that the value of the property to be taken, at $300 per acre, was $19,636.

He valued the residue at $119,556 prior to the take, and at $88,924 after the take. He explained that the residue was reduced by "environmental change," and added that:

"The existence of a sewage facility in very close proximity to the property, I believe, reduces the value of that property. For instance, this home, which was highly marketable before, I feel, will be less marketable because of the occasional or quite frequent aroma that is not too pleasant."

Hopkins also identified a part of the land that would be landlocked.

Another appraiser for appellees testified that damage to the residue as a result of odor from the sewage plant and possible water well contamination was $39,701.

In addition, one of the owners testified that the value of the real estate would be damaged by the odor from the sewage plant.

At no point did appellant object to either the questions asked or the answers tendered with respect to the impact of the sewage plant on the residue.

The appraiser for appellant testified that there would be no damage to the residue.

We consider the assignments of error in inverse order.

### Assignment of Error No. II

Procedurally, a motion *in limine* has been created out of whole cloth. It receives no integrity from either the Rules of Civil Procedure, the Rules of Evidence, or statutory enactment. Here, it was used in an effort to get a "declaratory judgment" prior to the commencement of the testimony as to the admissibility of evidence that the odor from a sewer plant has a deleterious and compensable effect on the residue of the property to be taken.

We are disquieted by the use and reliance upon the motion *in limine* as a

vehicle to preliminarily determine the admissibility of evidence. As noted in *Riverside Methodist Hosp. Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308, 310, 3 OBR 355, 357, 444 N.E. 2d 1358, 1361:

"* * * Properly, a motion *in limine* cannot be used to determine the admissibility of evidence. It can serve the same purpose as a motion to suppress evidence where the evidence either is not competent or is improper. This should be a rare use of the motion *in limine.*"

The *Riverside* court further noted, however, that the ruling on a motion *in limine* is "only a preliminary interlocutory order precluding [or allowing] questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible. * * *" *Id.* at 310, 3 OBR at 357-358, 444 N.E. 2d at 1361.

Appellant relies on the proposition that "damages must be peculiar to the subject property and not such as are suffered generally by other landowners in the area" to be compensable in an eminent domain proceeding, citing Knepper & Frye, Ohio Eminent Domain Practice (1977) 272, Section 9.07. See, also, 38 Ohio Jurisprudence 3d (1982) 262, Eminent Domain, Section 182.

Appellant claims two Ohio Supreme Court cases, *New York, Chicago & St. Louis RR. Co.* v. *Bucsi* (1934), 128 Ohio St. 134, 190 N.E. 562, 93 A.L.R. 632, and *Richley* v. *Jones* (1974), 38 Ohio St. 2d 64, 67 O.O. 2d 78, 310 N.E. 2d 236, support its position.

*Richley* was a highway appropriation case where U.S. Route 36 was to be converted from a two-lane to a four-lane highway with a median divider. The Director of Highways, by motion *in limine,* sought to prevent the owners from presenting any argument and evidence as to diminution in value as a result of the construction of the median divider. The trial court overruled the motion, and this court affirmed.

Justice (later, Chief Justice) Celebrezze, speaking for the court, observed that changes in traffic flow occasioned by placing median strips are an exercise of the police power of the state and that: "Any damages that might result from the doing of a lawful act are noncompensable — *damnum absque injuria.* If we allow this damage to be introduced in evidence because there is a concurrent taking of land we are, in effect, allowing compensation for it. * * *" *Richley, supra,* at 66, 67 O.O. 2d at 79, 310 N.E. 2d at 238.

The *Richley* court further observed that the landowner is entitled to just compensation but is not entitled to special damages because he is compelled to part with title. *Id.* at 69, 67 O.O. 2d at 81, 310 N.E. 2d at 239-240. The court concluded, in this highway appropriation case:

"The holdings in the lower courts in this cause have the effect of giving the landowner special damages. * * * He has suffered an 'inconvenience shared in common with the general public' * * *." *Id.* at 70, 67 O.O. 2d at 81, 310 N.E. 2d at 240. Accordingly, the Supreme Court reversed the judgment and remanded the cause to the trial court.

As pointed out by appellees, *Richley* and its predecessors, especially *New Way Family Laundry, Inc.* v. *Toledo* (1960), 171 Ohio St. 242, 12 O.O. 2d 373, 168 N.E. 2d 885, are highway cases involving newly created "circuitry of travel."

Appellant argues that the rationale of *Richley* is equally applicable to the construction of a sewage disposal plant and the impact of odor therefrom on the residue. Appellant

claims that the inconvenience shared in common with the general public in the "circuitry of travel" cases is of the same kind and quality as relates to sewage disposal plant odor.

Appellees counter by pointing to those cases allowing compensation for loss of value as a result of low level airplane flights over the property, citing, *e.g., State, ex rel. Royal,* v. *Columbus* (1965), 3 Ohio St. 2d 154, 32 O.O. 2d 147, 209 N.E. 2d 405.

In the absence of any direct authority upon this question, we distinguish *Richley* and find no error in the overruling of the motion *in limine* or in the admission of the evidence in the case *sub judice.*

Appropriation of property by municipal corporations for the purposes identified in R.C. 719.01 is to be exercised consistent with the provisions of R.C. 163.01 to 163.22. R.C. 719.01, next to last paragraph.

In this respect, R.C. 163.14 provides in part:

"In appropriation proceedings the jury shall be sworn to impartially assess the compensation and damages, if any, without deductions for general benefits as to the property of the owner.

"The jury, in its verdict, shall assess the compensation for the property appropriated and damages, if any, to the residue, to be paid to the owners. * * *"

Further, 38 Ohio Jurisprudence 3d (1982), Eminent Domain, provides:

"* * * Damages to the residue are reflected in the difference between the fair and reasonable market value of the residue prior to the appropriation and the fair and reasonable market value of the residue after the appropriation, or the difference in the fair market value of the property before the taking diminished by the fair market value of the portion taken less the fair market value after the taking." (Footnotes omitted.) *Id.* Section 163, at 238-239.

"* * * Full compensation in the case of a partial taking requires a remuneration or recompense for that detriment or loss to the owner in the value of his remaining property resulting from the use to which the appropriated property is or may be put. Damages must be assessed once for all, and, when once assessed according to law, they include all the injuries resulting from the particular appropriation and from the construction and operation of the works in a reasonable and proper manner for all time to come. * * *" (Footnotes omitted.) *Id.* Section 164, at 240-241.

"Fair market value is the price which would be agreed upon at a voluntary sale by an owner willing to sell to a purchaser willing to buy. More specifically, fair market value is what the land would bring, not upon a sale in the open market, either for cash or on long-time payments, but when offered for sale in the usual manner, by one who desires, but is not obliged, to sell, and bought by one who is under no necessity of having it, when both are fully aware and informed of all circumstances involving the value and use of the property, and 'market value,' as that term is used in regard to the measure of compensation for the property appropriated, and for the damages, if any, to the residue, means fair market value. * * *" (Footnotes omitted.) *Id.* Section 161, at 235-236.

In the case *sub judice,* as distinguished from the construction of a highway and linear appropriations relative thereto, this sewage plant is to be constructed solely on the property of appellees. The damages that will be suffered as to the residual property by both the odor and the potential leakage into the water supply are unique. No Pandora's box of potential liability to other neighbors is opened by this verdict and proposition of law. We see a justiciable difference between the "circuitry of travel" caused by construc-

tion of a highway median strip and the real diminution of value to the appellees' residue by the operation of the sewage plant.

Here, the witnesses, without objection, were permitted to answer the conclusory questions as to opinion, and then explain their answers. There was a sharp conflict on the issue of damages to the residue between the appellant's and appellees' expert witnesses. We believe the credibility of that testimony is properly left to the discretion of the finder of fact, the jury.

We overrule the second assignment of error.

### Assignment of Error No. I

A motion *in limine,* given no integrity by the Rules of Civil Procedure, is likewise not governed by the time provisions of Civ. R. 6(D).

Although the trial court erred in identifying failure to timely file the motion as one of several reasons for denying the motion *in limine,* for the reasons enunciated above, appellant suffered no prejudice.

The first assignment of error is overruled.

The judgment of the Perry County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PUTMAN, P.J., and SMART, J., concur.