[Cite as *State v. Morales*, 2014-Ohio-362.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120670 |
| | | TRIAL NO. 12CRB-18419 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| ELMER H. MORALES, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed from is: Affirmed

Date of Judgment Entry on Appeal: February 5, 2014

*John Curp*, City Solicitor, *Charles Rubenstien*, City Prosecutor, and *Jacqueline Pham*, Assistant City Prosecutor, for Plaintiff-Appellee,

*McKinney & Namai Co., LPA,* and *Paul W. Shonk*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

Per Curiam.

{¶1} Defendant-appellant Elmer H. Morales appeals from the judgment of the Hamilton County Municipal Court convicting him of domestic violence, in violation of R.C. 2919.25. For the reasons that follow, we affirm.

## I. Background Facts and Procedural History

{¶2} Morales was charged with domestic violence against his wife, Edlmira Laynez Vasquez, stemming from two separate incidents that occurred in 2008 and 2012. The cases were joined for a trial to begin in September 2012. On the day of trial, the court addressed several issues, including the state's motion in limine, the competency of the couple's oldest child, Darwin, to testify, and Morales's failure to comply with the discovery rules.

{¶3} The state's motion in limine, filed four days before the trial date, sought to prevent the admission of any evidence on, or reference to, the "citizenship status" of Vasquez. The state did not specifically identify Vasquez's citizenship status in its motion, but we understand from the record that she is a Guatemalan citizen, not a citizen of the United States. The state contended that her citizenship status was not relevant and that its admission would prejudice the jury against her.

{¶4} Morales opposed the motion in limine on several grounds. First, he argued that it was untimely. Second, he argued that Vasquez's citizenship status was relevant because it helped to establish his defense—that she had fabricated the charges to obtain an immigration benefit referred to as a U-visa.

{¶5} Morales explained that Vasquez, like himself, was in the country illegally, and that a noncitizen victim of certain enumerated crimes, including domestic violence, may apply for a U-visa after reporting the crime and cooperating

2

in the prosecution of that crime, as certified by certain law enforcement authorities. But Morales's suspicion that Vasquez had fabricated the charges to obtain a U-visa was based only on Vasquez's purported delay in reporting the crimes.

{¶6} Finally, Morales argued that the jurors would likely assume that Vasquez was an "undocumented individual" because of her appearance, and, therefore, their knowledge of Vasquez's citizenship status would not cause additional prejudice.

{¶7} The trial court determined that the neither the citizenship status nor immigration status of the alleged victim was relevant to the charge of domestic violence and that the admission of such evidence would be highly prejudicial. As a result, the trial court granted state's motion in limine.

{¶8} The trial court then, in accordance with Evid.R. 601, conducted a voir-dire examination of nine-year-old Darwin Morales. When the court completed its questioning, it provided the parties with an opportunity to ask Darwin questions and to comment on his response to questioning by the court. Defense counsel did not ask any questions and stated that he "ha[d] some doubts about [Darwin's] ability to truthfully testify today, but not enough to go beyond saying I have some doubts." The court then found Darwin competent to testify.

{¶9} Subsequently, the court addressed discovery issues. The court learned that Morales had intended to call three rebuttal witnesses and to cross-examine Vasquez with testimony that she had provided at a 2012 hearing in the domestic relations court. The 2012 hearing involved a civil restraining order that Vasquez had sought against Morales. But Morales had failed to provide the state with the names of the witnesses or a copy of a transcript from the 2012 hearing prior to trial. After determining that Morales had triggered the reciprocal discovery duties under

Crim.R. 16, including the pretrial disclosure of witnesses, the court excluded the testimony of the three defense witnesses as a discovery violation. The court, however, determined that Morales would be allowed to use Vasquez's prior testimony from the 2012 hearing to impeach her, if appropriate, but that he had to immediately provide the state with a copy of the transcript from that hearing.

{¶10} At trial, Vasquez and Darwin testified for the state, and Morales testified in his own defense. Vasquez and Morales provided their testimony with the assistance of two Spanish-English interpreters.

{¶11} Vasquez testified that she and Morales had been married since June 2002 and that they had three children together, the oldest being Darwin. According to Vasquez, Morales was often verbally and physically abusive to her, and he warned her that if she told anyone, he would seek revenge. She also testified that she had been faithful to him, although Morales often accused her of having extramarital affairs.

{¶12} In their apartment on September 24, 2008, Morales had accused her of cheating on him and had demanded to examine her underwear. He then hit her and threw her on the bed while screaming that she was "worthless" and a "slut." Before leaving the apartment, he threatened Vasquez that if she was still there when he returned, he would kill her.

{¶13} Vasquez testified that she went to the police station to report the incident and to the hospital. As a result of her conversations at these places, she returned to the apartment, gathered some belongings, and, accompanied by her children, went to stay at a women's shelter for three days. She returned home because Morales had promised her that he would not hit her anymore and because her uncle had become involved and protected her.

4

{¶14} She filed a police report, even though she feared that Morales would harm her. But her efforts in following up on the charges were frustrated due to the language barrier, and Morales was not arrested at that time.

{¶15} According to Vasquez, Morales treated her better for a of couple years. But after her uncle left the country and she gave birth to their third child, Morales's verbal and physical abuse resumed, as did his threats of revenge if she reported him to the police.

{¶16} She claimed that on March 11, 2012, she and Morales had argued in their apartment after she had asked him for documents that were needed for Darwin to obtain medical care. Then, in front of Darwin, Morales had grabbed her by her hair and shirt and pulled her to the front door, where he forcefully slapped her and knocked her to the floor. He then left the apartment.

{¶17} After Morales left, Vasquez asked Darwin to bring her the telephone so that she could call the police. According to Vasquez, Darwin refused, saying "no, mom, no, it's my father."

{¶18} Darwin's testimony at trial corroborated Vasquez's testimony that Morales had pushed her and slapped her on the March 2012 date. He also confirmed that he had refused to bring her the telephone and had asked her not to call the police.

{¶19} Morales returned to the apartment the day after the March 2012 incident, but eventually agreed to a separation. Vasquez did not report the March 2012 incident to the police until June 2012.

{¶20} On cross-examination, Vasquez was asked if she had admitted to Morales that she had had an affair with a pastor from their church. She testified that

5

she had told Morales that she had had an affair, even though it was false, because he had seen her hugging the pastor and she had wished for forgiveness for that act.

{¶21} Also during cross-examination, defense counsel asked Vasquez if she had obtained documents falsely identifying her as Daisy Hernandez. She admitted that she had. Defense counsel inquired further about these identification documents, asking if Vasquez had used them to get a job. The state objected to that question on the ground that it involved the subject matter of the motion in limine. The trial court agreed and sustained the objection.

{¶22} Morales testified in his defense and denied ever harming his wife. He did not deny, however, that an altercation had occurred on March 11, 2012, and that Darwin had observed it. According to Morales, Vasquez had attacked him and he had merely grabbed her hands and moved them from his person.

{¶23} Morales also remembered September 24, 2008, as the day that Vasquez had left their home with the children and had stayed in a women's shelter for three days. She left, he recalled, after he had told her that he had intended to discuss her infidelity with members of their church.

{¶24} In contrast to Vasquez's testimony, Morales relayed that he and his wife had "never" argued during their marriage. He claimed that she had multiple affairs but that he had quietly endured the shame.

{¶25} At the conclusion of the trial, the jury found Morales guilty of the 2012 charge, but acquitted him of the 2008 charge.

## II. Exclusion of Impeachment Evidence and Right to Confront Victim

{¶26} In his second assignment of error, which we address first, Morales argues that the trial court erred by granting the state's motion in limine. The state argues that Morales did not seek to introduce or proffer evidence of Vasquez's lack of citizenship status or the U-visa benefit during trial and, therefore, he failed to properly preserve the issue for appeal.

{¶27} The state is correct in its characterization of the effect of the trial court's ruling on a motion in limine. A motion in limine is a "tentative, interlocutory, preliminary ruling" that reflects the trial court's "anticipatory treatment of an evidentiary issue." *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986).

{¶28} When a motion on an evidentiary matter is properly characterized as "liminal, * * *[f]inality does not attach when the motion is granted," because the trial court has the discretion "to change its ruling on the disputed evidence in its actual context at trial." *City of Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991), citing *Grubb* at 201-202; *see Garrett v. City of Sandusky*, 68 Ohio St.3d 139, 141, 624 N.E.2d 704 (1994).

{¶29} Therefore, the ruling on the motion, alone, does not preserve for appeal an error in the admission or exclusion of evidence. *State v. Hill*, 75 Ohio St.3d 195, 202-203, 661 N.E.2d 1068 (1996); *State v. Maurer*, 15 Ohio St.3d 239, 259-260, 473 N.E.2d 768 (1984); *State v. Keegan*, 67 Ohio App.3d 824, 826, 588 N.E.2d 928 (1st Dist.1990). Instead, the party who has been "temporarily restricted from introducing evidence by virtue of a ruling on a motion in limine" must "seek the introduction of the evidence by proffer or otherwise to enable the court to make a final determination as to its admissibility and to preserve any objection on the record

for purposes of appeal." *State v. Clowers*, 134 Ohio App.3d 450, 454, 731 N.E.2d 270 (1st Dist.1999), citing *Grubb* at paragraph two of the syllabus.

{¶30} Although Morales intimates that the state's motion should be treated as a motion to suppress, the state's motion in limine is properly characterized as liminal, and not as the functional equivalent of a motion to suppress. The state sought an anticipatory ruling by the court on the admissibility of evidence on Vasquez's citizenship status, claiming that the evidence should be excluded because it was not relevant, and its introduction would be highly prejudicial. Morales, therefore, was required to seek a final determination on the admissibility of the disputed evidence at trial, when the court could review it in the context of the other evidence.

{¶31} The record in this case demonstrates that Morales did, in fact, preserve the issue for appeal. He attempted to introduce evidence of Vasquez's citizenship status when he questioned her about her use of documents in the name of Daisy Hernandez to apply for employment. The state objected to that line of questioning on the ground that it related to the subject matter addressed in the motion in limine, and the trial court sustained the objection on that basis. Thus, it is clear from this record that Morales sought to introduce evidence of Vasquez's citizenship status at trial and the trial court prohibited him from doing so. Although Morales's assignment of error challenges only the ruling on the motion in limine, because Morales obtained a final ruling on the evidentiary issue at trial, we construe the second assignment of error as challenging this final evidentiary ruling.

{¶32} The gravamen of Morales's complaint is that by precluding inquiry about Vasquez's citizenship, the court excluded impeachment evidence about immigration benefits that she may have been eligible for as a result of her accusation,

resulting in violation of the rules of evidence and his Sixth Amendment right of confrontation.

{¶33} As provided in Evid.R. 616(A), impeachment may be accomplished either by cross-examination or by the introduction of extrinsic evidence demonstrating bias, prejudice, interest, or any motive to misrepresent. This impeachment evidence must be relevant, as required by Evid.R. 402. And relevant impeachment evidence may be excluded under Evid.R. 403(A) if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶34} A criminal defendant can establish a violation of his Sixth Amendment right of confrontation by "showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors * * * could appropriately draw inferences relating to the reliability of the witness.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

{¶35} In this case, Morales cannot demonstrate that the trial court erred by excluding evidence of Vasquez's citizenship and immigration status. He failed to lay a foundation by the way of a proffer to demonstrate that the evidence would lead to probative impeachment evidence and, moreover, that the probative value of the evidence would not be substantially outweighed by the dangers of unfairly prejudicing the jury against Vasquez and of confusing the issues at trial. *See* Evid.R. 403(A).

{¶36}  Morales did not proffer any evidence that Vasquez had applied for the U-visa benefit or that she could have benefitted from the program due to her citizenship and immigration status.  Nor was there any indication that she even knew of the benefit. Morales's suspicion that Vasquez had fabricated the charges to obtain a U-visa was based only on his perception that she had delayed in reporting the crimes.  But the evidence demonstrated that Vasquez had reported the 2008 incident immediately, and that she had persuasive reasons for failing to immediately report the 2012 incident:  her son asked her not to call the police, she feared retribution, Morales eventually agreed to a separation, and she later obtained a civil protection order that the domestic relations court withdrew on June 15, 2012, the same day that she filed criminal charges.

{¶37}  On the state of this record, we cannot say that the trial court abused its discretion in excluding the evidence of Vasquez's citizenship status, even though it precluded any inquiry on the U-visa benefit, because Morales failed to proffer the proper foundation.  *See State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  Further, because Morales has not shown that the excluded evidence was relevant in this case, he cannot demonstrate a violation of his confrontation rights based on his inability to cross-examine Vasquez on the subject of the prohibited evidence.  *See Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (holding that unless the defendant can show that the proposed cross-examination would have produced a significantly different impression of the witness's credibility, the trial court's exercise of discretion in that matter will not be deemed to have violated the defendant's confrontation rights).

{¶38}  Accordingly, we overrule Morales's second assignment of error.

### III. Motion in Limine and Time Requirement of Crim.R. 45(D)

{¶39}   In his first assignment of error, Morales argues that the trial court should have overruled the motion in limine on the ground that the state did not serve the motion seven days before the hearing on the motion, as required by Crim.R. 45(D).  This rule provides time periods for motions, and states that a written motion shall be served seven days prior to a hearing date "unless a different period is fixed by rule or order of the court."

{¶40}   In this case, the state served the written motion in limine four days before the day of trial, which is when the trial court heard arguments on the motion.  On that day, the trial court offered Morales a continuance to respond to the motion in limine, which Morales rejected.  Morales had the opportunity at trial to further articulate his arguments when the trial court sustained the state's objection and actually excluded the testimony.

{¶41}   Morales does not cite any authority holding that motions in limine are subject to the time requirements of Crim.R. 45(D), and we have not found any.  In the civil context, some courts have expressly held that motions in limine are not subject to the time requirements of the similarly worded Civ.R. 6(D), now Civ.R. 6(C).   *See Roseville v. Thompson*, 58 Ohio App.3d 29, 33, 567 N.E.2d 1334 (5th Dist.1989); *Minneapolis Flour Co. v. City of Cleveland*, 188 Ohio App.3d 146, 2010-Ohio-2607, 934 N.E.2d 966, ¶ 17 (8th Dist.).

{¶42}   After considering the issue, we conclude that a motion in limine such as the one filed in this case is not the type of motion contemplated by the time requirement set forth in Crim.R. 45(D).

{¶43}    There is no provision for a "motion in limine" in the rules and statutes governing procedure and evidence.  *Grubb*, 28 Ohio St.3d at 201, 503 N.E.2d 142; *State v. Lundy*, 41 Ohio App.3d 163, 165, 535 N.E.2d 664 (1st Dist.1987);  *see State v. Gabel*, 75

11

Ohio App.3d 675, 677, 600 N.E.2d 394 (6th Dist.1991) (a motion in limine is not a pretrial motion encompassed by Crim.R. 12(B), now Crim.R. 12(C), and Crim.R. 12(H)).

{¶44} Further, a motion in limine such as the one used in this case can be raised at any time during the proceedings, even at trial. *State v. Grant*, 11th Dist. Lake No. 92-L-037, 1993 Ohio App. LEXIS 3579 (July 16, 1993); *compare State v. French*, 72 Ohio St.3d 446, 450-452, 650 N.E.2d 887 (1995)(holding that a motion in limine that is the functional equivalent of a motion to suppress must be raised pretrial). Moreover, the trial court is not required to rule on a motion in limine prior to trial. *State v. Harvey*, 1st Dist. Hamilton No. C-880737, 1990 Ohio App. LEXIS 159 (Jan. 24, 1990.) Thus Morales's position that the seven-day rule in Crim.R. 45(D) applies to motions in limine would create practical difficulties in application.

{¶45} Further, as we have previously noted, a trial court's disposition of a motion in limine such as the one in this case is ultimately irrelevant, because the trial court may change its ruling on the disputed evidence when it is presented in context at trial, *Kretz*, 60 Ohio St.3d at 4, 573 N.E.2d 32, and the issue must be revisited at trial to preserve the party's position on the evidentiary issue. *Maurer*, 15 Ohio St.3d at 259, 473 N.E.2d 768, citing *State v. Wilson*, 8 Ohio App.3d 216, 219-220, 456 N.E.2d 1287 (8th Dist.1982).

{¶46} For these reasons, we hold that the time requirement of Crim.R. 45(D) did not apply to the state's motion in limine. Accordingly, we overrule the second assignment of error.

### IV.  Competency of a Child Witness

{¶47} In his third assignment of error, Morales argues that the trial court erred when it determined that his son Darwin was competent to testify for the state. Darwin was nine at the time of trial and during the court's pretestimony voir dire examination.

12

{¶48} Under the provisions of Evid.R. 601(A), a child who is less than ten years of age is not competent to be a witness if the child "appear[s] incapable of receiving just impressions of the facts and transactions respecting which [he is] examined, or of relating them truly." The determination of a witness's competency is committed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991).

{¶49} In this case, Morales failed to object to the competency finding in the trial court. Therefore, we review only for plain error. To prevail under a plain error standard, Morales must demonstrate that the outcome of the trial would clearly have been different but for the alleged error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶50} Before a child under ten years of age may testify, the trial court must conduct a pretestimony voir dire examination of the child. The purpose of that voir dire examination is to discern the following:

> (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciating of his or her responsibility to be truthful.

*Frazier* at syllabus.

{¶51} Although Morales argues that the trial court's inquiry was too cursory and, thus, did not support a finding of competency, our review demonstrates otherwise. Morales contends that Darwin was incompetent because he nodded in response to

questions concerning his ability to appreciate his responsibility to be truthful, but he articulated verbal answers to other types of questions. He claims that these responses demonstrate that Darwin was not clearly able to communicate what he observed and that he did not understand his responsibility to be truthful.

{¶52} We note, however, that Darwin nodded in response to questions seeking a yes or no answer. Further, the trial judge, who was in a position to view the child's demeanor, accepted Darwin's nods as affirmative responses  Although it would have been better if the court had instructed Darwin to verbalize a response, nothing in the record contradicts the validity of the trial court's determination that Darwin's nods were intended as affirmative responses.   Moreover, Darwin's appreciation of his responsibility to be truthful was demonstrated at trial. Although he had first testified on cross-examination that his father had moved out of the apartment two days after the March 2012 incident, he later testified that he had not told the truth when he made that statement and that he did not actually know when his father moved out of the home. He then confirmed that the rest of his testimony was "the truth."

{¶53} Finally, Darwin was able to recollect the events that occurred on the evening of March 11 and to convey his impressions of those events during voir dire and at trial. He clearly recalled that his father had hit his mom and thrown her to the floor when she had tried to retrieve a document from him so that he could go to the doctor, and that his father had tried to hurt his mom.

{¶54} Because Darwin's competency is adequately demonstrated on the record, we hold that the trial court did not abuse its discretion in finding Darwin competent. As a result, Morales cannot demonstrate plain error. Accordingly, we overrule the third assignment of error.

### V. Exclusion of Defense Witnesses as a Discovery Violation

{¶55}    In his fourth, and final, assignment of error, Morales argues that the trial court erred by excluding three of his witnesses as a discovery violation.  These witnesses were pastors at churches and, according to Morales's proffer, they intended to testify that Vasquez had had extramarital affairs.  Morales intended to use these pastors as rebuttal witnesses if Vasquez at trial denied participating in extramarital affairs.  Morales, however, failed to include these witnesses on his witness list.

{¶56}  Because our record demonstrates that the trial court failed to engage in the proper analysis before imposing the extreme sanction of exclusion, we hold that the trial court abused its discretion when it imposed that sanction in this case.  Ultimately, though, we hold that the error did not affect Morales's substantial rights and was harmless.

{¶57}    By requesting discovery from the state, Morales triggered the duties of Crim.R. 16(I), which requires each party to provide opposing counsel with a witness list that includes "the names and addresses of any witness [the party] intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal."  Morales was aware that Vasquez had already testified under oath at the June 2012 hearing on the civil protection order that she had not participated in extramarital affairs, and he reasonably should have anticipated similar testimony.

{¶58}    Although he does not dispute that he violated the discovery rule, he argues that the trial court did not comply with the law when it excluded his witnesses because the court failed to consider whether a less severe sanction such as a continuance was appropriate under the circumstances.  And he argues that this error violated his constitutional rights.

{¶59}    Crim.R. 16(L)(1), which contains the same language formerly found in Crim.R. 16(E)(3), provides a range of sanctions from which the court, in its discretion,

15

may impose on a party that fails to comply with the discovery rules. These sanctions range from "permit[ting] the discovery or inspection, grant[ing] a continuance, [] prohibit[ing] the party from introducing in evidence the material not disclosed, or * * * mak[ing] such other order as it deems just under the circumstances."

{¶60} In *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus, the Ohio Supreme Court set forth the proper standard for the trial court to employ when responding to an allegation of a discovery rule violation. The "trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the lease severe sanction that is consistent with the purpose of the discovery rules." *Id.* The court recently confirmed this standard when it held, in *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, syllabus, that the standard applies equally to discovery violations committed by the state and by a criminal defendant.

{¶61} The *Lakewood* court identified a list of factors that the trial court should consider before imposing a discovery sanction on a criminal defendant, including "the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions." *Lakewood* at 5.

{¶62} In this case, our record demonstrates that the trial court did not consider any of these factors, including whether a lesser sanction would be consistent with the purposes of the discovery rule, and instead imposed exclusion as a consequence of Morales's bare failure to comply. Although the trial court has discretion in determining a sanction for a discovery violation, an abuse of discretion includes the failure to engage in "a sound reasoning process." (Internal quotation omitted.) *Darmond* at ¶ 33. Because

the trial court imposed the sanction of exclusion without engaging in the sound reasoning process provided by the *Lakewood* factors, we find an abuse of discretion.

{¶63} Morales argues that the trial court's error rose to the level of a constitutional violation. He contends that the sanction of exclusion infringed upon his Sixth Amendment right to present a defense. We disagree.

{¶64} In *Lakewood*, the defendant was a building owner charged with violating a city ordinance that required the heating of occupied premises. *Lakewood*, 32 Ohio St.3d at 1, 511 N.E.2d 1138. The defendant committed a discovery violation by failing to disclose his witness list. *Id.* As a sanction, the court excluded the testimony of all the defendant's witnesses, with the exception of the defendant. *Id.* The court's order excluded the testimony of a witness who would have testified that on the date of the alleged violation the boiler of the building had been operational, heating had been adequately provided, and garage doors had been left open all day. *Id.* at 4. A second witness would have confirmed that the building's garage doors had been left open. *Id.*

{¶65} The Supreme Court found that the excluded testimony was "obviously material and relevant to the offenses charge" and, if believed, may have led to an acquittal. *Id.* Because of this, the court concluded that the sanction had the effect of denying the defendant his Sixth Amendment right to present a defense. *Id.*

{¶66} As noted by the state, this case is distinguishable from *Lakewood*. Unlike in *Lakewood*, the testimony that the trial court precluded was not material or relevant to the charge of domestic violence. None of the pastors witnessed the altercations. Morales sought only to present evidence on a collateral matter, Vasquez's alleged infidelity, as a means of impeaching her. The trial court may have later properly excluded the testimony on other grounds. *See, e.g.*, Evid.R. 403 and 608(B). Unlike in *Lakewood*, Morales was not denied the right to present a defense.

{¶67} Moreover, Morales testified that Vasquez was unfaithful, and the trial court allowed Morales to impeach Vasquez with her prior testimony at the hearing on the civil protection order, in which she admitted that she had confessed her infidelity to Morales. Under these circumstances, we conclude that the trial court's error in excluding Morales's witnesses without first applying the proper standard did not affect Morales's substantial rights, but instead was harmless. *See* Crim.R. 52(A). Accordingly, we overrule the fourth assignment of error.

## VI. Conclusion

{¶68} Because Morales has failed to demonstrate any error affecting his substantial rights, we affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.**, **FISCHER** and **DEWINE, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.